ANN BROWN, PLAINTIFF–APPELLANT, v. ST. VENANTIUS SCHOOL AND THE ROMAN CATHOLIC ARCHDIOCESE OF NEWARK, JOINTLY AND/OR SEVERALLY, DEFENDANTS–RESPONDENTS.

Argued March 14, 1988—Decided August 8, 1988.

*Judith E. Rodner* argued the cause for appellant (*Geltzeiler, Mandel, Berezin & Feinstein,* attorneys; *Judith E. Rodner* and *Judith D. Musser,* on the brief).

*William A. Cambria* argued the cause for respondent (*William A. Cambria,* attorney; *Janice Falivena,* on the brief).

The opinion of the Court was delivered by

GARIBALDI, J.

The narrow question presented in this appeal is whether a private school operated by a nonprofit religious organization is liable to a nonbeneficiary pedestrian for injuries caused by the school's failure to remove snow and ice from an abutting sidewalk.

In *Stewart v. 104 Wallace St., Inc.*, 87 *N.J.* 146, 157 (1981), this Court held "that commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." Subsequently, in *Mirza v. Filmore Corp.*, 92 *N.J.* 390 (1983), we held that maintenance of public sidewalks abutting commercial properties includes removal or reduction of snow and ice where a reasonably prudent person would do so under the circumstances. Both decisions specifically limited their holdings to "commercial" property owners and specifically did not extend the doctrine to "residential" property owners. The issue, therefore, is whether under those decisions defendant falls within the category of a "residential" property owner or a "commercial" property owner. Additionally, we consider whether the New Jersey Charitable Immunity Act, *N.J.S.A.* 2A:53A-7, shields defendant from tort liability under these circumstances.

I.

The question arises within the context of defendants' successful motion for summary judgment. Accordingly, in considering the facts we grant plaintiff the benefit of all favorable inferences. At approximately 8:00 a.m. on January 21, 1982, as she was walking to work, plaintiff, Ann Brown, slipped and fell on the public sidewalk abutting St. Venantius School in Orange. She testified during her deposition that after stepping off a public bus, she proceeded to walk along the sidewalk where she slipped and fell on snow and ice that had accumulated there. Plaintiff contends that the sidewalk had not been cleared,

sanded, or salted, and as a result of defendant's negligence, she sustained extensive injuries from her fall.

Plaintiff fractured her leg, requiring hospitalization and surgery. Plaintiff asserts that as a result of her injuries, she was unable to work for four weeks in 1982 and six weeks in 1983. She continues to suffer pain and is permanently disabled.

Plaintiff brought suit against defendants, St. Venantius School and the Roman Catholic Archdiocese of Newark, charging them with negligence in failing to remove the natural accumulation of ice and snow on the sidewalk. Given our disposition of this appeal, we do not distinguish between these defendants throughout our opinion. On remand, either or neither of these defendants could ultimately be liable.

Defendant St. Venantius School was a part of St. Venantius Church, a religious corporation organized pursuant to *N.J.S.A.* 16:15–1 to –8. Defendants represent that defendant Roman Catholic Archdiocese of Newark, a distinct legal entity organized pursuant to *N.J.S.A.* 16:15–9 to –17, did not own, operate, or control either the property on which the Church was located or the property on which the School was located.

Defendants moved for summary judgment, contending that as a noncommercial landowner, St. Venantius had no duty to maintain the abutting sidewalk. The Law Division granted defendants' summary judgment motion. Subsequently, defendants represented that due to declining membership and financial hardship, St. Venantius Church has dissolved and St. Venantius School has closed.

The Appellate Division affirmed the trial court's ruling with one judge dissenting. The *per curiam* majority opinion construed *Stewart v. 104 Wallace St., Inc., supra,* 87 *N.J.* 146, as limiting sidewalk liability to "enterprises for profit engaged in the buying and selling of goods or services." Although recognizing that "defendants' parochial school charges tuition to students, pays teachers and others and buys supplies, all aspects of a 'business' operation," the court held that the nonprof-

it nature of the School renders it "non-commercial" and thus immune from sidewalk liability under *Stewart.*

The dissenting judge in the Appellate Division took the opposite approach, deeming the School to be "non-residential" and within the "commercial" category under *Stewart,* and therefore subject to sidewalk liability:

> The rationale of the rule was that, as between an injured plaintiff and an abutting commercial owner, fairness dictates placing the burden for the loss upon the property owner who can through insurance spread the cost of the injury to the users of its products or services. The rule protects homeowners who would be required to absorb the cost of insurance, since they have no customers or receivers of services to whom to pass those costs.... Those charitable institutions which charge for their services can increase their prices slightly to defray the cost of appropriate insurance, or if no charges are made, they may look to their funding sources for this slight increase. This result is less harsh than imposing the entire loss upon plaintiff who was injured by the negligent maintenance of the sidewalk.

By virtue of the dissent, plaintiff appealed to this Court as of right under *Rule* 2:2–1(a)(2). The appeal is limited solely to the legal question raised by the dissent. We reverse.

## II.

In *Stewart v. 104 Wallace Street, Inc., supra,* we held that commercial landowners are responsible for maintaining, in reasonably good condition, sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so. Prior to our ruling in *Stewart,* abutting landowners, commercial and residential, had not been held responsible for the maintenance of abutting sidewalks. *See Yanhko v. Fane,* 70 *N.J.* 528 (1976). In *Stewart,* we specifically restricted the responsibility to commercial landowners. *Stewart v. 104 Wallace St., Inc., supra,* 87 *N.J.* at 150.

In *Stewart* we cited several reasons for our holding. First, we recognized the unfairness in immunizing commercial property holders who had the ability to foresee sidewalk accidents and who merely sat idly by and did nothing. *Stewart v. 104 Wallace St., Inc., supra,* 87 *N.J.* at 154. Second, we acknowledged that our prior no-liability rule left many innocent victims

of sidewalk accidents without any recourse due to the statutory limitations on the liability of public entities. *Id.* at 155 & n. 3. Third, we observed that a no-liability rule gave property owners "no incentive to repair deteriorated sidewalks and thereby prevent injuries." *Id.* at 155. "Indeed," the Court noted, "[a no-liability rule] actually provides a disincentive since an owner, presently not liable for failure to repair, will be liable for repairs voluntarily undertaken but negligently performed." *Id.* at 155 (citing *Murray v. Michalak,* 58 *N.J.* 220, 223 (1971) (Proctor, J., dissenting)); *Snidman v. Dorfman,* 7 *N.J.Super.* 207, 211 (App.Div.1950). We also acknowledged that a primary foundation of our earlier no-liability rule no longer existed. *Id.* 87 *N.J.* at 155–56. If municipalities at one time had the sole responsibility for maintaining sidewalks, they no longer did. State law expressly authorizes municipalities to impose a duty on property holders to repair abutting sidewalks. *See N.J.S.A.* 40:65–14. Finally we recognized an anomaly in our old no-liability rule, at least as that rule applied to commercial land-owners: "in accidents occurring within the boundaries of business premises, a plaintiff injured as a consequence of defendant's failure to maintain safe premises would have a cause of action, whereas the same plaintiff injured on a poorly maintained sidewalk just outside the premises would, under the present law, have no such cause of action." *Stewart v. 104 Wallace St., Inc., supra,* 87 *N.J.* at 157 (citing *Yanhko v. Fane, supra,* 70 *N.J.* at 543–44 (Pashman, J., dissenting)).

We summarized the advantages of imposing a duty on commercial landowners for sidewalk maintenance as follows:

This new rule responds to many of the weaknesses of the no liability rule. It will provide a remedy to many innocent plaintiffs for injuries caused by improper maintenance of sidewalks. As a corollary, it will give owners of abutting commercial property an incentive to keep their sidewalks in proper repair, a duty already created in many cases by municipal ordinances. It will also eliminate much of the arbitrariness of the old rule. In addition, injured persons will be able to recover for injuries sustained just outside a store as well as those sustained within it.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

*Furthermore, as has been noted, the owners of abutting property, particularly commercial property, retain considerable interests in and rights to use sidewalks over and above those of the public—a fact which renders imposition of the duty of maintenance upon them appropriate and not "arbitrary," as suggested in Yanhko, supra. Logic and common sense also support the imposition of this duty, inasmuch as owners of abutting property are in an ideal position to inspect sidewalks and to take prompt action to cure defects.* [*Id.* at 157–58 (emphasis added & citations omitted).]

In *Mirza v. Filmore Corp., supra,* 92 *N.J.* 390, we recognized a duty, again limited to commercial landowners, to remove snow and ice from abutting sidewalks in instances where such removal would be the standard of care expected of a reasonably prudent person under the circumstances. *Mirza* essentially made snow and ice removal a part of the general maintenance responsibility for commercial landowners articulated in *Stewart.*

In specifically limiting the new liability rule to commercial landowners, we observed in *Stewart* that the condition of abutting sidewalks is " 'so beneficially related to the operation of the business' " that liability is warranted. *Stewart v. 104 Wallace St., Inc., supra,* 87 *N.J.* at 159 (quoting *Krug v. Wanner,* 28 *N.J.* 174, 179–80 (1958)). We also recognized that the potential increased expense of insurance will be more burdensome to small firms than to large ones. *Id.* at 160. In *Mirza,* we commented that the risk of loss to or the burden of higher insurance premiums for commercial property owners as the result of the newly imposed sidewalk liability could be spread "through higher charges for the commercial enterprise's goods or services," as distinct from residential owners, who must bear the loss. *Mirza v. Filmore Corp., supra,* 92 *N.J.* at 397.

This court has not ruled previously on whether the requirements of *Stewart* and *Mirza* should be extended to institutions organized exclusively for religious, charitable, educational or hospital purposes. In a few cases, however, the Appellate Division has considered the application of the duties announced in these cases to such entities. *Compare Lombardi v. First*

*United Methodist Church*, 200 *N.J.Super.* 646, 648 (App.Div. 1985) (held: church did not have a duty to maintain abutting sidewalk; court found "no warrant in ... *Stewart* to extend the rule of liability imposed on commercial property owners to owners of property used exclusively for religious purposes") *with Christmas v. City of Newark*, 216 *N.J.Super.* 393 (App. Div.1987) (church trustees, who owned premises where lessee operated doughnut shop, would be proper defendants in sidewalk injury suit by pedestrian).

In *Stewart* we stated: "As for the determination of which properties will be covered by the rule we adopt today, commonly accepted definitions of 'commercial' and 'residential' property should apply with difficult cases to be decided as they arise." 87 *N.J.* at 160 (footnote omitted). As anticipated, a difficult case has arisen.

Clearly, defendant St. Venantius School, a private school, is not a residential property. No one resides in the School. *Cf. Roman Catholic Diocese of Newark v. Ho–Ho–Kus Borough*, 47 *N.J.* 211 (1966) (schools do not constitute a residential use under community's zoning ordinance). The more difficult question is whether a private school operated by a nonprofit religious corporation falls within the "commercial" category.

■ At the time of plaintiff's accident, defendant St. Venantius School, like other similarly situated parochial and private schools, charged tuition to its students, employed teachers and other personnel, purchased supplies and teaching materials, and maintained a physical plant. Like other business in this State, the School and other similarly situated parochial and private schools must comply with numerous government regulations. Undeniably, a for-profit private school, not connected with any charity, charging tuition and operated in all other respects substantially like defendant, would be deemed, under *Stewart* and *Mirza*, a commercial landowner for purposes of sidewalk liability. Despite its similarity to such a clear case, defendant St. Venantius School asserts that because it is a nonprofit

religious institution, it cannot be classified a "commercial" landowner under *Stewart.* We disagree.

■ Defendants initially contend that St. Venantius should be exempt from any duty to maintain abutting sidewalks due to its status as a religious organization. We reject that contention. The duty to maintain its abutting sidewalks would in no way interfere with the exercise of religious practices by St. Venantius. *See, e.g., Market Street Mission v. Bureau of Rooming and Boarding House Standards,* 110 *N.J.* 335 (1988). In *Market Street Mission,* we stated, "[i]t cannot be doubted that religious institutions do not enjoy an absolute immunity from worldly burdens." 110 *N.J.* at 340. In such situations, "a delicate balancing of secular and sacred interests is required." *Id.* at 340. Balancing these interests in cases such as the one before us requires first that we consider the use of the abutting land, not the nature of the organization that owns the property. For example, if a church owned an abutting property used for a restaurant or hotel, the church in that instance would clearly be a commercial landowner. *See, e.g., Kirby v. Columbian Institute,* 101 *N.J.Super.* 205 (Hudson Cty.Ct.1968) (nonprofit corporation chartered to promote mental and moral improvement of mankind did not enjoy charitable immunity from tort liability when it operated bar and bowling alley). Conversely, the sidewalk in front of a parsonage or rectory abuts residential property. Thus, we reject the notion that religious organizations per se cannot be commercial landowners for purposes of sidewalk liability.

We likewise reject defendants' assertion that we should not include nonprofit organizations in the category of commercial landowners subject to a duty to maintain abutting sidewalks. Primarily, defendants contend that we should not impose this duty on not-for-profit entities because their financial condition typically is weak and such a duty would impose a considerable monetary burden on their already precarious financial posture. We certainly are mindful of the good works performed by

religious and charitable organizations. We acknowledge that unlike for-profit enterprises, nonprofit organizations exist for a broad range of religious and charitable purposes. As the School's own history exemplifies, their financial condition is often weak and their resources scarce. Nevertheless, all nonprofit organizations, like all businesses, are not the same. Many nonprofit organizations have substantial assets and healthy balance sheets, while many for-profit enterprises operate on thin profit margins and are continually in very precarious financial positions.

In *Stewart*, we recognized that the imposition of a duty to maintain abutting sidewalks would place a greater burden on small businesses than on large businesses. 87 *N.J.* at 160. Despite that, we believed that as between even a small business in a weak financial position and an injured pedestrian, the fairer solution was to impose the duty on the business. The same reasoning applies here. Some nonprofit organizations have substantial assets and large budgets and should find this duty only minimally burdensome. Others, like defendant St. Venantius School, are in a very weak position and may be forced to raise tuition or, if need be, generate greater donations to defray any increased costs created by this duty. Nevertheless, we agree with the dissenting opinion below that this result is less harsh than imposing the entire loss on a pedestrian injured by the negligent maintenance of a sidewalk.

Moreover, we are unpersuaded that the financial burden of the duty to remove snow and ice from an abutting sidewalk is as onerous as defendants characterize it. At least with respect to defendant St. Venantius School and other similarly situated parochial and private schools, we believe the duty is appropriate. Like the commercial landowners in *Stewart* and *Mirza*, the School would be liable if plaintiff had slipped and injured herself on the steps leading into the school or inside the school building. To expand the School's duty of care to its abutting sidewalks does not greatly add to the type of maintenance tasks the School routinely undertakes. Safe and convenient access to

the School is undeniably a necessary component of that defendant's daily activities. Nor do we believe care of the sidewalks should inordinately add to the School maintenance expenses. Private schools obviously carry liability insurance. Thus, we reject defendants' economic argument particularly where the alternative is to place the economic burden of injury on the passerby.

Significantly, the Municipal Ordinances of Orange mandate snow and ice removal:

§ 185–7. Removal of snow and ice by occupant.

The owner of any lands or premises occupying the same which abut or border upon any street, avenue, highway or sidewalk within the city or, in the event that the owner thereof does not occupy such lands or premises, then the lessee, tenant or occupant thereof shall remove all snow or ice from the sidewalks and gutter adjacent to or in front of any such lands and premises within the first twelve (12) hours of daylight after any such snow or ice shall be formed or fall thereon.

Since this is an appeal from a summary judgment motion, we make no observations whatsoever concerning whether defendants complied with this ordinance. That is strictly a factual determination that we in no way consider. Moreover, we acknowledge the well-settled principle that municipal ordinances do not create a tort duty, as a matter of law. *Yanhko v. Fane, supra,* 70 *N.J.* at 536; *Liptak v. Frank,* 206 *N.J.Super.* 336, 339 (App.Div.1985), certif. den., 103 *N.J.* 471 (1986). Nevertheless, we simply note that the municipal ordinance applies to defendant St. Venantius School just as it does to all abutting landowners in the municipality. Thus, the City of Orange has previously declared a civic duty for landowners to remove snow and ice from abutting sidewalks.

### III.

■ Furthermore, the imposition of liability on this defendant for its failure to remove snow and ice from an abutting sidewalk is consistent with our State's charitable immunity statute. The New Jersey Charitable Immunity Act, *N.J.S.A.* 2A:53A–7 to –10, adopted in 1959, reads, in pertinent part, as follows:

> No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; *provided, however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation, society, or association or of its agents or servants where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association;* but nothing herein contained shall be deemed to exempt the said agent or servant individually from their liability for any such negligence.
>
> [*N.J.S.A.* 2A:53A–7 (emphasis added).]

Both the defendants in this case are educational and religious organizations covered by this Act. The Act on its face does not immunize defendants from liability in this case, however, because the Act immunizes qualifying charitable organizations from tort liability only to one who is "a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association." *N.J.S.A.* 2A:53A–7. Plaintiff is not a beneficiary of defendant organizations. No one claims that plaintiff was a "beneficiary" of St. Venantius Church or St. Venantius School. At least at this time in this litigation, it is undisputed that plaintiff was a "stranger" to defendants; she is "unconcerned in and unrelated to and outside of the benefactions of" St. Venantius School and St. Venantius Church. By its own language, the Act does not apply, and, therefore, does not immunize defendants from liability.

Defendants, however, submit that even though the Charitable Immunity Act has no direct application to this case, the Act reflects a legislative policy of significant limitations on tort liability against charitable organizations in this state. The Legislature, defendants maintain, has sent a clear signal to the judiciary that new duties or liabilities in tort should not be imposed on charities.

The Charitable Immunity Act was passed in order to immunize nonprofit entities organized exclusively for religious, charitable, or hospital purposes from tort liability *in specific circumstances. See* Bottari, "The Charitable Immunity Act," 5

*Seton Hall Leg. J.,* 61, 61 (1980). Most significantly, the plain language of *N.J.S.A.* 2A:53A–7 specifically reinforces our holding today that a charitable organization may be liable in tort to a nonbeneficiary for its failure to maintain an abutting sidewalk.

As a "stranger," or nonbeneficiary, Ms. Brown would be able to recover damages from St. Venantius School if she were injured from a fall on the steps of the school building. The Charitable Immunity Act would not immunize the School from liability under those circumstances. Furthermore, we do not believe the Legislature intended the courts to refrain from imposing liability on charitable organizations in cases not specifically covered by the statute. Clearly, the Legislature could have immunized charitable organizations from liability to strangers or nonbeneficiaries had it so chosen. Instead, the Legislature adopted a statute that did just the opposite: *N.J. S.A.* 2A:53A–7 expressly declares that the Act does not insulate charitable organizations from tort liability to strangers.

We cannot see how such a plain, straightforward pronouncement guides us to immunize charitable organizations from liability in cases where the Act does not apply and where our own independent judgment leads us to the conclusion that a duty is owed. Of course, the Legislature may change by statute the result we have chosen. As the Charitable Immunity Act currently reads, however, we do not discern a legislative policy that compels us to immunize defendants from liability in the case before us. Indeed, we conclude that such a result would be contrary to the Legislature's intent as embodied in the Charitable Immunity Act, which is expressly tailored to limit liability only in specified cases.

In our recent decision in *Market Street Mission v. Bureau of Rooming and Boarding House Standards, supra,* 110 *N.J.* 335, we held that the public safety regulations of a government agency applied to a boarding house operated by a religious organization. We recognized that the State has "the power to

impose public safety requirements on organizations, both religious and secular" that provide the services covered by the agency regulations. *Id.* at 337. The Rooming and Boarding House Act of 1979, the Act at issue in *Market Street*, specifically exempted certain categories of boarding houses from the safety provisions of the Act. The Act did not exempt religious boarding houses. Accordingly, we concluded that in the absence of a specific exemption, the Legislature did not intend to exclude religious boarding houses. *Id.* at 338.

Similarly, today we discern no legislative policy that leads us to immunize defendants from the liability we impose on commercial landowners for sidewalk maintainence. In the Charitable Immunity Act, the Legislature outlined the contours of charitable immunity for this state, and we do not discern a policy that exceeds those contours and that would lead us to shield defendants from liability in this case. Defendants already enjoy the substantial immunities created by the Legislature in the Charitable Immunity Act. Beyond these immunities, we see no reason why a nonprofit private school run by a charity should receive a greater benefit than any other private school as against the right of a plaintiff to recover for his or her injuries caused by the failure of the school to maintain properly its abutting sidewalk.

## IV.

Today, we hold only that this defendant parochial school falls within the commercial landowners category established in *Stewart* for purposes of liability for maintenance of abutting sidewalks. Thus, the concomitant duty of snow and ice removal that we established in *Mirza* also becomes the legal responsibility of defendant School. We therefore reverse the summary judgment order entered in defendants' favor and remand. We do not in any way suggest that defendants will ultimately be liable to plaintiff. Only for purposes of appellate review of the legal question presented here did we construe the facts in

plaintiff's favor. See *Bilotti v. Accurate Forming Corp.*, 39 *N.J.* 184 (1963); *Hyland v. Long Beach Township*, 160 *N.J.Super.* 201 (App.Div.1978).

Accordingly, the judgment of the Appellate Division is reversed and the cause remanded.

CLIFFORD, J., concurring.

According to the majority in the Appellate Division this Court's opinions in *Stewart v. 104 Wallace St., Inc.*, 87 *N.J.* 146 (1981), and *Mirza v. Filmore Corp.*, 92 *N.J.* 390 (1983), "changed the law, newly imposing * * * liability [for injuries caused by failure to maintain abutting sidewalks in reasonably safe condition] on commercial property owners only." That liability, in the view of the majority below, did not extend to nonprofit charitable property owners such as defendants before us.

The dissenter below agreed with his colleagues in the majority that the *Stewart* rule of abutting owner liability is confined to commercial landowners. The point of departure that produced his dissent—and hence the basis for the *only* issue before us, *R.* 2:2–1(a)(2), there having been no Petition for Certification by either party seeking to broaden the questions for review (see *Stone v. Old Bridge*, 111 *N.J.* 110, 123 (1988) (dissenting opinion))—was his conclusion that this Court, "in establishing the broad categories of 'commercial' and 'residential,' intended to include property owned by religious corporations and even municipal corporations within the 'commercial' category." Hence the dissenter would have reversed the trial court and remanded for trial.

As does the majority, I too would reverse and remand, with, however, a significant caveat. I have always believed, and continue to believe, that *Stewart, Mirza,* and *Cogliati v. Ecco High Frequency Corp.*, 92 *N.J.* 402 (1983), were wrongly decided. See *Stewart, supra,* 87 *N.J.* at 162 (dissenting opinion); *Mirza, supra,* 92 *N.J.* at 401 (concurring opinion); and *Cogliati,*

*supra,* 92 *N.J.* at 418 (concurring opinion). But I have long since given up the ghost, and have bowed to the principle of *stare decisis* with what I would hope is becoming grace if not with any enthusiasm or depth of conviction. Should enough votes materialize (I do not discern them on the horizon), I would do a U-turn and restore *Yanhko v. Fane,* 70 *N.J.* 528 (1976), to its position as representative of this state's sidewalk law.

For today's purposes I would acknowledge that the state of the law is such that plaintiff may have a cause of action against an owner of commercial property abutting a public sidewalk but not against the owner of abutting residential property. Because I agree with those who would include St. Venantius's property in the "commercial" category, at least for sidewalk-liability purposes, I side with the majority.

But there is another problem. Justice Pollock has chosen to go beyond the single issue presented—namely, whether the subject property falls within the classification of "commercial" for purposes of imposition of liability a la *Stewart*—and to address anew the question, alien to this appeal, of whether there should be yet a further expansion of the sidewalk liability of abutting owners. I would not reach that question. We went to pains in 1979 to amend *Rule* 2:2–1(a)(2) to limit our review in cases that came to us because of a dissent in the Appellate Division. The disappointed party's appeal as of right is limited to "those issues as to which[ ] there is a dissent * * *." *R.* 2:2–1(a)(2). Beyond that the parties are consigned to the Petition-for-Certification route. *R.* 2:2–1(b). See *supra* at 327.

Were I, like Justice Pollock, to breeze right by that restriction on our jurisdiction and go beyond the "residential-commercial" question to address the broader issue, I would reach the same result as Justice Pollock—that is, I would scrap the distinctions based on the use to which the abutting property is put and would permit the imposition of liability against the occupier of abutting property for failure to take reasonable

steps to remove snow and ice that impedes the public's right of free passage. *See also Stewart, supra,* 87 *N.J.* at 160–62 (Schreiber, J., concurring) (in the absence of municipal maintenance of sidewalks, an abutting owner owes "a duty of due care to maintain a public sidewalk * * * so that it does not constitute a hazard to members of the public lawfully using it." *Id.* at 160).

Even though I am unhappy with—but accept—the imposition of liability on a commercial owner, why should we draw a distinction between a commercial owner and a residential or any other kind of owner for purposes of the imposition of liability in favor of an innocent pedestrian? No more today than I could thirteen years ago can I find a principled basis for that distinction. See *Davis v. Pecorino,* 69 *N.J.* 1, 9–12 (1975) (dissenting opinion). I continue to wonder "why * * * a business operator [should] have imposed on him a legal duty [that] an abutting residential owner or operator escapes under circumstances precisely the same from the point of view of the injured pedestrian, a stranger to both of them." *Id.* at 12.

Therefore, swallowing hard on what I perceive to be the essential silliness of our current rule, but accepting the fact that my yearning for the good old days of *Yanhko, supra,* 70 *N.J.* 528, is not about to be fulfilled, I find myself in substantial agreement with Justice Pollock's reasoning that takes him, and therefore me, to the same result as the majority.

POLLOCK, J., concurring.

As recently as twelve years ago, this Court held that an abutting property owner was not liable for a pedestrian's injuries caused by a negligently maintained sidewalk. *Yanhko v. Fane,* 70 *N.J.* 528 (1976). Then, seven years ago, we overruled *Yanhko* and held that an injured pedestrian could recover from a commercial property owner when that owner negligently maintained the abutting sidewalk. *Stewart v. 104 Wallace St., Inc.,* 87 *N.J.* 146 (1981). And just five years ago, we extended the liability of commercial property owners to injuries

due to natural accumulations of snow and ice on the sidewalk. *Mirza v. Filmore Corp.*, 92 *N.J.* 390, 394–96 (1983). Today the Court extends to a non-profit religious organization that operates a private school liability "for injuries caused by the school's failure to remove snow and ice from an abutting sidewalk." *Ante* at 327. Today's decision may fairly be read as adopting the reasoning not only of *Stewart* and *Mirza*, but also that of separate opinions of former members of this Court who, in the face of the former rule of non-liability, urged recognition of a cause of action against abutting property owners for negligent maintenance of their sidewalks. *Yanhko, supra*, 70 *N.J.* at 537–50 (Pashman & Schreiber, JJ., dissenting); *Murray v. Michalak*, 58 *N.J.* 220, 226 (1971) (Proctor, J., dissenting); *Moskowitz v. Herman*, 16 *N.J.* 223, 226–31 (1954) (Jacobs, J., with whom Vanderbilt, C.J., joined, dissenting).

The trend of our decisions points toward liability of property owners, regardless of their identity or the use of their property, for negligent maintenance of sidewalks. One need only read our cases to identify the forces at work in the evolution of the liability of abutting property owners for negligent sidewalk maintenance. In extending liability, our decisions have considered the foreseeability of sidewalk accidents, *Stewart, supra*, 87 *N.J.* at 154; the allocation of the risk of loss to the party best able to control that risk, *ante* at 334; *id.* at 155; the distribution of the risk of loss to the party best able to bear it, *ante* at 334; *Mirza, supra*, 92 *N.J.* at 397–99; the compensation of innocent victims, *Stewart, supra*, 87 *N.J.* at 155; and, ultimately, fairness, *ante* at 334; *Stewart, supra*, 87 *N.J.* at 154, *Moskowitz, supra*, 16 *N.J.* at 228. So analyzed, the decision should not turn on the nature of the use of the property any more than it should turn on the nature of the organization that owns the property. *Ante* at 333.

Under the rationale of the majority opinion, the rights and duties of pedestrians and property owners will become a crazy quilt of tort law. For example, if the sidewalk extended from the school to a parsonage or rectory, the church itself, or to

other properties owned by the defendants, plaintiff's right to recover from the defendants would appear and disappear as she walked down the sidewalk. If she fell opposite the school, the church, or a restaurant or hotel owned by the defendants, she could recover, but not if she fell opposite the parsonage or rectory. *Ibid.* I find those results so inconsistent as to be irrational. In each instance, the property owner is better able to control the risk and to distribute the cost of that risk. As we pointed out in *Mirza,* prudent property owners can, and generally do, purchase comprehensive or homeowners' liability insurance covering sidewalk accidents. 92 *N.J.* at 398. Furthermore, the injured party's need for compensation is no less when he or she walks down the sidewalk alongside one property than it is when he or she walks alongside another. Finally, it is fair that the pedestrian be allowed to recover no matter who owns the property.

As Justice Schreiber stated in his concurring opinion in *Stewart:*

Imposition of a duty to maintain the adjacent sidewalk depends upon the existence of sound policy justification. In other words, is it fair? We are therefore called upon to consider such factors as the relationship of the parties, the nature of risk, the person best able to prevent the dangerous condition, and the party who should bear the costs attributable to the injury.

Some of the more important considerations are apparent. The public has a right to travel on the sidewalk unimpeded by obstructions or dangerous conditions. The property owner is generally in the best position to become aware of disrepair, and then correct the condition. Moreover, the owner has a special interest in having a walk in good condition. If the property is being used for a business activity, it is in the owner's interest to have safe means of ingress and egress for customers, employees and other invitees. The residential owner is concerned with the safety of his family, invitees and himself as well as the appearance of his property. Further, the owner generally may purchase an insurance policy covering liability to pedestrians injured because of defects in the sidewalk. When the injury to the innocent pedestrian is weighed against the interests of the property owner who was in a position to prevent the hazardous condition, notions of fairness weigh heavily in favor of imposing the obligation.

This policy has been affirmatively recognized by the Legislature in *N.J.S.A.* 40:65-14 which authorizes

[a]ny municipality [to] prescribe by general ordinance in what case curbs and sidewalks shall be constructed, repaired, altered, relaid or maintained at the expense of the abutting landowners * * *.

The statute further prescribes that a municipality pursuant to a resolution may serve a notice requiring the owner to repair the sidewalk in 30 days and that in default thereof the municipality may do the work, the cost to become a lien on the property.

In some circumstances the municipality may maintain the public sidewalk. Arguably, when that is true the property owner has no control over, or the right to correct, the condition. I would recognize that circumstance as an exception to the general proposition which would operate as a defense to be established by the property owner. [87 *N.J.* at 161–62.]

Here, East Orange adopted an ordinance, *ante* at 334, requiring the abutting owner, regardless of the identity of the owner or the nature of the use, to remove snow or ice from the sidewalks. Although an ordinance need not be a condition precedent to the imposition of liability, the adoption of an ordinance requiring the removal of snow and ice adds further support to the imposition of liability on all property owners regardless of their identity or the use to which they put their property.

Justices CLIFFORD and POLLOCK, JJ., concurring in result.

*For reversal and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HEARN, GARIBALDI and STEIN—7.

*For affirmance* —None.