38 A.3d 669 (2012)
424 N.J. Super. 489
Fatma MOHAMED, Plaintiff-Appellant,
v.
IGLESIA EVANGELICA OASIS DE SALVACION, Defendant-Respondent.
Docket No. A-6019-10T4
Superior Court of New Jersey, Appellate Division.
Argued March 7, 2012.
Decided March 21, 2012.
*670 Mitchell D. Perlmutter, Jersey City, argued the cause for appellant (Zavodnick, Perlmutter & Boccia, L.L.C., attorneys; Mr. Perlmutter, on the brief).
Gerald Kaplan, Edison, argued the cause for respondent (Methfessel & Werbel, attorneys; Mr. Kaplan, of counsel and on the brief; Amanda J. Sawyer, on the brief).
Before Judges FUENTES, KOBLITZ and HAAS.
The opinion of the court was delivered by
HAAS, J.S.C. (temporarily assigned).
Plaintiff tripped and fell after she stepped into a depression in a sidewalk adjacent to property owned by defendant Iglesia Evangelica Oasis De Salvacion. Plaintiff sued defendant for damages for the injuries she allegedly sustained as a result of her fall. Finding defendant to be a non-commercial entity and thus not subject to sidewalk liability under Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 432 A.2d 881 (1981) and its progeny, the trial judge granted defendant's motion for summary judgment. Because the trial court should have permitted plaintiff to complete discovery before considering defendant's motion, we reverse and remand to the trial court for further proceedings.

I
In order to place the factual issues raised in this matter in their proper context, we begin with a review of the settled law in this area. Generally, absent negligent construction or repair, a landowner does not owe a duty of care to a pedestrian injured as a result of the condition of the sidewalk abutting the landowner's property. Stewart, supra, 87 N.J. at 153, 432 A.2d 881. However, the Supreme Court of New Jersey has carved out an exception to this no-liability rule with respect to sidewalks abutting a commercial landowner's property. Id. at 150, 432 A.2d 881. In Stewart, the Court held that commercial landowners owe a duty to reasonably maintain the sidewalks abutting their property and, if they fail to exercise that duty, they are liable to the injured pedestrians. Id. at 157, 432 A.2d 881.
*671 Ordinarily, to determine whether a property is commercial or residential, a court will address the nature of the ownership of the property. Restivo v. Church of St. Joseph of the Palisades, 306 N.J.Super. 456, 463, 703 A.2d 997 (App.Div.), certif. denied, 153 N.J. 402, 709 A.2d 796 (1998). For example, if the property is owned for investment or business purposes the property is classified as commercial. See, e.g., Wilson v. Jacobs, 334 N.J.Super. 640, 645-46, 760 A.2d 818 (App. Div.2000) (classifying a one-family residence as "commercial" where owners did not occupy that property but, instead, rented it to their adult daughter and did not intend to retain the property at the expiration of the lease).
Our courts, however, have applied a different analysis when property is owned by a religious, charitable or other nonprofit organization. In those cases, we look to the nature of the use of the property, not the nature of the ownership. Restivo, supra, 306 N.J.Super. at 467, 703 A.2d 997. The status of a nonprofit organization as religious or charitable is not crucial to a determination of whether the property is commercial or residential. Brown v. St. Venantius School, 111 N.J. 325, 333-36, 544 A.2d 842 (1988). Instead, it is the use of the property that determines its classification for the purposes of abutting sidewalk liability.
We have considered the issue of whether a church is a commercial operation, in whole or in part, in several reported decisions. In Lombardi v. First United Methodist Church, 200 N.J.Super. 646, 491 A.2d 1350 (App.Div.), certif. denied, 101 N.J. 315, 501 A.2d 970 (1985), an injured pedestrian sought to impose liability on a church for injuries sustained from a dilapidated sidewalk abutting the church's property. Id. at 647, 491 A.2d 1350. The church did not engage in any commercial activities but, instead, used its property solely for religious purposes. Ibid. We noted that the exception to the no-liability rule only applied to commercial landowners and held that when a church uses its property solely for religious purposes, that use does not constitute a "commercial" use. Id. at 648, 491 A.2d 1350.
In Brown, supra, the question before the Supreme Court was whether a private school operated by a nonprofit religious corporation constituted a "commercial" use. 111 N.J. at 327, 544 A.2d 842. The Court held that a church, which operated a private school, was a "commercial" landowner for purposes of determining its duty to remove snow and ice from an abutting sidewalk. Id. at 338, 544 A.2d 842.
In Restivo, supra, a pedestrian slipped and fell on ice on a public sidewalk adjacent to property owned by a church. 306 N.J.Super. at 459, 703 A.2d 997. There were apartment buildings on the property and the church leased the units as a form of social charity to needy families and church employees under fair market value or for no rent at all. Ibid. We held that the church's use of its property for rental units constituted a commercial use, regardless of the amount of rent it charged. Id. at 468-69, 703 A.2d 997.
Most recently, in Dupree v. City of Clifton, 351 N.J.Super. 237, 798 A.2d 105 (App.Div.2002), aff'd o.b., 175 N.J. 449, 815 A.2d 960 (2003), a pedestrian fell on an uneven sidewalk. The abutting landowner was a nonprofit church that used its property solely for religious and noncommercial purposes. Id. at 240, 798 A.2d 105. Once again, we focused on the nature of the use of the property, rather than upon the nature of the ownership of the land. Id. at 242-43, 798 A.2d 105. We held that if the church's use of the property is "exclusively religious, e.g., if the organization uses the property solely as a parish or rectory, then the organization will not be *672 considered a `commercial' landowner, and, liability will not be imposed." Id. at 245, 798 A.2d 105. On the other hand, "[i]f the organization's use of the property is partially or completely `commercial,' e.g., if the property is used as a parish and for commercial purposes or solely used for commercial purposes, liability attaches despite the nonprofit status of the owners." Id. at 245-46, 798 A.2d 105. In Dupree, no commercial activity of any type took place on the property. Therefore, we held that the church could not be held liable for the pedestrian's injuries. Id. at 246, 798 A.2d 105.
In sum, liability is imposed upon the owner of a profit, or not-for-profit enterprise, regardless of whether the enterprise is in fact profitable. "It is the capacity to generate income which is the key." Abraham v. Gupta, 281 N.J.Super. 81, 85, 656 A.2d 850 (App.Div.), certif. denied, 142 N.J. 455, 663 A.2d 1362 (1995).

II
When a party appeals a trial court's grant of summary judgment, we review de novo whether summary judgment was proper. Simonetti v. Selective Ins. Co., 372 N.J.Super. 421, 427, 859 A.2d 694 (App.Div.2004). Accordingly, we must first decide whether there was a genuine issue of fact, and then, if there was not, decide whether the trial court's ruling on the law was correct. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
In the present case, the factual issue presented was whether defendant used its property exclusively for religious purposes or whether, as plaintiff alleged, it used the property, at least in part, for commercial purposes. Asserting that there was no dispute as to any material fact, defendant filed a motion for summary judgment. This motion was supported only by a four-paragraph certification of defendant's treasurer, Angel Rosas, who averred that no member of the church had ever made any repairs to the sidewalk abutting its property; that plaintiff was not a member of the church, and that the church property "is now and has always been used exclusively for religious purposes."
Nine days before the motion was heard by the trial court, plaintiff took the depositions of Rosas and the church's pastor, Edward Perez. At his deposition, Perez related that the church used its property for Sunday services and other services throughout the week. However, he also stated that the church would receive monetary "donations" for the use of its parking lot and for permitting people to use its basement for parties. Perez stated that his father, Jose Perez, and Rosas would have information on the "offerings" collected for the use of these facilities.
Rosas stated that the church has a fourteen-space parking lot. It permits both church members and non-members to use this lot while they shop or use the nearby PATH train to commute to work. Rosas claimed that defendant did not charge anyone to use the parking spaces. However, he admitted that donations were made by those who used the lot; that the payments were made by check, and that records of these donations were kept in two sets of ledgers maintained by the church. One of the ledgers was for church members and the other was for non-members. Rosas did not produce the ledgers at his deposition.
Rosas testified that he did not have all of the details about the income received from the use of the parking lot, but he estimated that the church received $1,000 to $1,200 per month in donations as a result of its use. Significantly, Rosas testified *673 that Perez' father, the church groundskeeper Jose Perez, would have the most information about the parking lot's use.
Rosas also testified that the church has a basement hall that was used for parties several times a year by members, their families and friends. When the hall was used in this fashion, the church received donations of approximately $300 to $350 from those holding the event.
At the time the trial court considered defendant's motion for summary judgment, the transcripts of Rosas' and Edward Perez' deposition testimony were not yet available for the court's review. Plaintiff had also not yet had the opportunity to depose Jose Perez and the church had not yet turned over its financial records as requested by plaintiff. The discovery period still had another five months to run.
Nevertheless, the trial court proceeded to hear argument on the motion and subsequently issued an Order granting defendant's motion for summary judgment. In a written opinion, the court found that there was no dispute as to the material facts. Mohamed v. Iglesia Evangelica Oasis de Salvacion, 423 N.J.Super. 96, 97, 30 A.3d 376 (Law Div.2011). It found that the church permitted parish members to use the church hall and that it took donations for this use several times a year. Id. at 97, 30 A.3d 376. As for the parking spaces, the court found that the church "gives some parishioners and their friends and family permission to park in the lot for the purposes of commuting or shopping." Id. at 101, 30 A.3d 376.
In evaluating plaintiff's argument that the church was not used exclusively for religious purposes, the trial court was not convinced that allowing individuals to use the church hall or permitting commuters to use its parking lot, and receiving "donations" in return, made the property a "commercial property." Id. at 101, 30 A.3d 376. Of significance to the trial court was the fact that the availability of the church hall and the parking spaces was not advertised to the general public, as well as the fact that there were no formal fees, leases or terms of use. Ibid. The court further found that "the fact that only parishioners and their friends and family use the basement and parking spaces is relevant." Id. at 102, 30 A.3d 376. On this basis, the court concluded that the church property was not "`commercial' within the commonly accepted use of the word, and thus the owner has no duty to maintain the sidewalk." Ibid. Therefore, the court granted defendant's motion for summary judgment. Ibid.
Plaintiff subsequently filed a motion for reconsideration. She provided the court with the transcripts of the deposition testimony of Perez and Rosas. She argued that the court's finding that only parishioners and their friends or families used the parking lot was not supported by the deposition testimony, which indicated that non-members also used the spaces in return for donations. Plaintiff again pointed out that discovery was not complete at the time defendant's motion was granted and that she wanted to review defendant's financial records and depose Jose Perez.
The trial court denied plaintiff's motion for reconsideration in a brief, oral opinion. The court stated that it was aware at the time of the original motion that discovery was not complete, but that it did not believe that any additional discovery would reveal any significant facts which would bear on its decision with respect to the summary judgment motion. The court further found that plaintiff's contentions as to what the church's financial records and the testimony of Jose Perez would reveal were "frankly probably more speculation than anything else." The court also found *674 that "the argument that the classification and number of individuals who park at the church are relevant on [the] issue of summary judgment was rejected in the first instance and would not be relevant to the court's decision on a motion for reconsideration."

III
On appeal, plaintiff asserts that defendant's motion for summary judgment should have been denied as premature because the motion was considered before discovery was completed. We agree.
A motion for summary judgment may be made as early as twenty days from the service of the complaint, R. 4:46-1, but in general, "summary judgment is inappropriate prior to the completion of discovery." Wellington v. Estate of Wellington, 359 N.J.Super. 484, 496, 820 A.2d 669 (App.Div.), certif. denied, 177 N.J. 493, 828 A.2d 920 (2003). A party challenging a motion for summary judgment on grounds that discovery is as yet incomplete must show that "there is a likelihood that further discovery would supply ... necessary information" to establish a missing element in the case. J. Josephson, Inc. v. Crum & Forster Ins. Co., 293 N.J.Super. 170, 204, 679 A.2d 1206 (App.Div.1996). The party must show, with some specificity, the nature of the discovery sought and its materiality to the issues at hand. In re Ocean County Comm'r of Registration, 379 N.J.Super. 461, 478, 879 A.2d 1174 (App.Div.2005).
Generally, our courts seek to afford "every litigant who has a bona fide cause of action or defense the opportunity for full exposure of his case." Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193, 536 A.2d 237 (1988), (citing United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co., 74 N.J. 92, 99, 376 A.2d 1183 (1977)). Where a party opposing a motion for summary judgment is unable to file fully responsive supporting papers because critical facts are particularly within the moving party's knowledge, the motion should be denied to permit the opposing party an opportunity for complete discovery. Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 A.2d 24 (1963).
Here, the discovery period still had five months to run at the time the trial court considered plaintiff's motion for summary judgment. Two depositions had been completed, but the transcripts of those proceedings were not available to the trial court at the time defendant's motion was argued.
More critically, both deponents identified Jose Perez as the individual who would have more specific information concerning the use of the church's parking lot and the payments or donations received from those who parked there. The motion was decided before Perez' deposition could be taken.
Just as significantly, Rosas, the church's treasurer, testified that two sets of books were maintained, one for church members and one for non-members, concerning the use of the lot and the church hall basement. Plaintiff had requested that these financial records be provided to her, but defendant had not turned over the ledgers by the time the trial court made its decision.
In addition to the financial information that these ledgers would provide, plaintiff would have also received the names and, possibly, contact information for the lot users. This would have enabled her to interview those individuals to explore and test defendant's claims that no one was ever asked to contribute a specific amount to use the lot.
In denying plaintiff's motion for reconsideration, the trial court ruled that there *675 was no indication that other testimony or documentation would shed more light on the issues involved in the case at hand. However, defendant's own witnesses had taken the position, in claiming that they could not provide details concerning the use of the parking lot, that Jose Perez' testimony would help to illuminate the issue. Rosas had testified that the parking lot generated up to $1,200 per month in "donations." Having the opportunity to review the church's actual ledgers would have enabled plaintiff to test the treasurer's credibility and to learn the full extent of the "commercial" nature of the lot's use.
Contrary to the trial court's finding, the classification of lot users as church members or non-members and the number of individuals who park at the church would have been relevant in determining the nature of the activities occurring at the church. As set forth herein, liability can be found, even against a non-profit organization that uses the property for primarily religious purposes, if the organization engages in some degree of commercial activity on the premises. Restivo, supra, 306 N.J.Super. at 468-69, 703 A.2d 997. The amount of income generated by the commercial activity is not determinative. Ibid. Given the fact that defendant was receiving donations for the use of the parking spaces for what appeared to be non-religious purposes, plaintiff should have been given the opportunity to continue discovery before consideration of defendant's motion.
Because plaintiff should have been given the opportunity to complete discovery, the trial court erred in granting defendant's motion for summary judgment. Reversed and remanded. We do not retain jurisdiction.