**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0182-24

DIEGO GARCIA, and individual,
and EVELYN TORRES, an
individual,

     Plaintiffs-Appellants,

v.

GREGORIO PAULINO, an
individual, and RUFINA
RODRIGUEZ, an individual,

     Defendants-Respondents.

_____

Argued September 8, 2025 – Decided October 24, 2025

Before Judges Sabatino and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3377-21.

Sean M. Mahoney argued the cause for appellants (Stathis & Leonardis LLC, attorneys; Sean M. Mahoney, of counsel and on the brief).

Michael K. Willison argued the cause for respondents (Dickie, McCamey & Chilcote, PC, attorneys; Michael K. Willison, on the brief).

PER CURIAM

Plaintiffs Diego Garcia and Evelyn Torres appeal from a Law Division order granting summary judgment to defendants Rufina Rodriguez and Gregorio Paulino and dismissing their complaint. Plaintiffs claimed injuries from two separate slip-and-fall incidents on a sidewalk abutting defendants' two-family residence—one unit of which was rented to the plaintiffs. Based on our de novo review of the record and applicable legal principles, we affirm.

I.

Plaintiffs initiated claims against defendants seeking recovery for injuries sustained in February 2021 when both slipped and fell on ice on the sidewalk in front of defendants' Perth Amboy residence. The property contained two residential units, one of which was rented by plaintiffs and the other occupied by defendants as their primary residence. Plaintiff Garcia, who had just returned home from work, slipped and fell on the sidewalk while he was walking to retrieve his phone from his car. Garcia's doorbell camera recorded his fall.[1] (Pa117). After falling, Garcia went inside and slept. Plaintiff Torres was sleeping at the time. Later that same morning, while exiting the residence to

_____

[1] We have reviewed all videos submitted by the parties in the record.

travel to work, Torres slipped and fell on the same area of the sidewalk. Garcia's doorbell camera also recorded Torres's fall.

After the case was joined, the parties engaged in discovery. Prior to the conclusion of discovery, the court ordered each defendant to appear for additional depositions limited to the issue of "residential vs. commercial" ownership of their property. As part of discovery, defendants produced a property survey which indicated the sidewalk where plaintiffs fell was outside of the property's boundary lines. After discovery concluded, defendants moved for summary judgment.[2] In response, plaintiffs moved to extend and compel discovery from defendants—more specifically, the motion sought more specific discovery responses to plaintiffs' post-deposition discovery demands.

In their submissions and at oral argument, defendants contended (1) they did not own the sidewalk based on the survey showing it was a public sidewalk and, as such, had no duty to maintain it; (2) the property was owner-occupied and residential, not commercial in nature, and they had no duty to maintain the public sidewalk; and (3) the terms of the lease agreement and any delegation of

---

[2] Defendants motion for summary judgment was titled a motion for reconsideration based on the prior denial of their initial summary judgment motion which we do not directly address herein.

sidewalk maintenance to the tenants did not establish a tort duty or shift liability to them.

Plaintiffs countered that there were genuine factual issues as to whether the sidewalk was public or part of defendants' private property. They produced the city tax map and asserted it showed the sidewalk was part of the defendants' property and referenced the property maintenance history by defendants to support they owned and controlled the sidewalk.

Plaintiffs also contended that the landlord/tenant relationship—specifically, the lease agreement—demonstrated defendants' responsibility over the maintenance of the sidewalk. They argued the lease attempted to delegate snow and ice removal responsibilities to the tenants, supporting their claim that defendants owned and inherently maintained control of the sidewalk. Plaintiffs also argued it was the duty of defendants, as part of the tenancy, to provide safe ingress and egress to the property. They contended that defendants had a duty to maintain the sidewalk to ensure their safe access as tenants.

Plaintiffs further argued that they were entitled to an extension of the discovery end date to obtain more specific discovery responses including

A-0182-24

defendants' full Schedule E[3] from their tax returns to clarify whether the rental unit generated income and should be classified as commercial for liability purposes.

After the conclusion of argument, the court rendered an oral decision finding the property survey and video footage showed the fall occurred on a public sidewalk, not property owned by defendants, and the maintenance performed by defendants did not create liability. The court further determined the lease was residential, and any attempt to delegate sidewalk maintenance to tenants did not affect the public nature of the sidewalk or impose liability on defendants.

Relying upon our holding in Grijalba v. Floro, 431 N.J. Super. 57 (App. Div. 2013), the court found the property was predominantly residential. The court determined defendants had lived there continuously, did not acquire the property for business/investment purposes and no genuine issue existed that the rent received did not exceed the carrying costs.

The court rejected plaintiffs' argument that landlords have a duty to maintain public sidewalks for ingress/egress of the tenants, noting that New

---

[3] Schedule E of Form 1040 is used to report income from rental real estate and several other types of entities. See www.irs.gov. (Last visited October 9, 2025)

A-0182-24

Jersey law does not impose a duty on residential owners unless the condition is aggravated by the owner. The court also determined that even if further financial discovery of defendants' tax documents were provided, it would not outweigh the evidence supporting the property's residential classification under Grijalba. An order was entered granting defendants' motion for summary judgment and denying plaintiffs' motion to compel and extend discovery "as moot."

On appeal, plaintiffs contend the trial court erred by granting summary judgment to defendants because genuine issues of material fact existed as to whether: (1) plaintiffs fell on a public or private sidewalk; (2) defendant's agreement to owning the sidewalk through the express terms in the lease agreement showed the sidewalk was part of their property for liability purposes; (3) defendants owed an inherent duty to plaintiffs as part of their tenancy to provide safe and convenient access to the property; and (4) the property was commercial and not residential. Plaintiffs also assert the trial court erred by denying their motion to extend and compel discovery, finding the motion "moot." They argue the discovery sought, including requests for documents related to defendants' ability to generate income or profit from the lease, was discoverable since it was relevant to whether the property was commercial or

A-0182-24

residential and the court erred by not requiring defendants to produce this information.

## II.

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Rule 4:46-2(c). Appellate courts review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

## A.

We first address plaintiff's contention that genuine issues of material fact existed in the record which precluded summary judgment concerning whether the sidewalk was owned by defendants or was a public sidewalk. Based on our de novo review of the record, we are not persuaded by this argument.

A-0182-24

The record reflects that defendants produced a survey of their property clearly showing the sidewalk was located outside defendants' property lines. In addressing defendants' submission of the city tax maps, we note "[o]fficial tax maps are prepared only for assessment purposes. Tax maps are prepared under the jurisdiction of the Local Property Tax Branch, Engineering Division, and must meet the tax map specifications as adopted by the Division; but these [maps] are created only for assessment purposes." Cox et al., New Jersey Zoning & Land Use Administration § 30-3.1, at 461 (2025). (emphasis added).

We conclude the purpose of a tax map is to provide a block and lot description for tax assessment purposes and is not a survey, does not utilize metes and bounds descriptions, nor provide an accurate description of the lot's property lines or boundaries. Therefore, we conclude plaintiffs' rebuttal evidence consisting of the city tax map, which depicts the sidewalk as part of the defendants' property, does not create genuine issues of material fact which precluded summary judgment.

B.

We now address plaintiffs' contention that the trial court erred by overlooking the importance of the language in the lease agreement which delegated snow and ice remediation responsibilities to the tenants. Plaintiffs

8

assert this created factual disputes as to ownership of the sidewalk or sufficiently showed defendants were responsible for the maintenance of the sidewalk warranting the denial of summary judgment.

The Lease Agreement states that "[m]ajor" maintenance of the leased premises will remain the responsibility of the defendants.

Specifically, regarding the "Use of Premises," the lease at Section Seven states:

> . . . Lessee shall comply with all the sanitary laws, ordinances, rules, and orders of appropriate governmental authorities affecting the cleanliness, occupancy, and preservation of the demised premises, and the sidewalks connected thereto, during the term of this lease.
>
> [(Emphasis added)]

The Lease specifically adopts and incorporates "ordinances" of "appropriate governmental authorities." Perth Amboy adopted a municipal ordinance stating:

> The owner or owners, occupant or occupants of any premises, property, or vacant land abutting or bordering upon any street in the City of Perth Amboy shall remove all snow and/or ice from the sidewalks of any street or, in case of ice which may be so frozen to the sidewalks as to make removal impracticable, shall cause the same to be thoroughly covered with sand or ashes within twenty-four (24) hours after same has ceased to fall or form thereon.

9

[(Emphasis added) City of Perth Amboy, N.J., Code § 380-1(A) (2011).]

Established law of our State dictates that a municipal ordinance does not create a tort duty as a matter of law. Luchejko v. City of Hoboken, 207 N.J. 199, 211 (2011). Further, we concur with the trial court that the lease clause in question was intended to ensure that tenants comply with local laws and ordinances and did not create genuine factual issues concerning defendants' ownership or control of the sidewalk. The relevant clause in the lease agreement required tenants to comply with sanitary laws and ordinances affecting the cleanliness of the premises and connected sidewalks. The trial court correctly determined, in light of the established case law, that the Lease Agreement did not impose a duty on defendants to maintain the sidewalk. We see no basis to disturb this determination.

C.

We next address plaintiff's contention, raised for the first time on appeal, that defendants owed them an "inherent" duty to provide safe and convenient access to the property regardless of ownership of the sidewalk. Plaintiffs rely on Brown v. St. Venantius School, 111 N.J. 325 (1988), for the proposition that safe and convenient access, including ingress and egress, is a necessary component of defendants' daily activities. In Brown, plaintiff sued St. Venantius

10

School and the Roman Catholic Archdiocese of Newark after she was injured from a fall on the sidewalk abutting the school. She claimed the school's failure to remove snow and ice from an abutting sidewalk caused her fall. Id. at 327. The trial court granted summary judgment in favor of the defendants, which we affirmed. Id. at 328. However, the Supreme Court reversed, holding that nonprofit organizations, including religious institutions, can be considered commercial landowners for the purposes of sidewalk liability. The Court determined that imposing the duty of sidewalk maintenance on the school was fairer than placing the entire burden on pedestrians. Id. at 333-34. The case was remanded for further proceedings, rejecting the notion that religious organizations are exempt from such liability.

Plaintiffs contend that although Brown concerned a private/parochial school's duty, the rationale is directly applicable to the present case. They argue similarly to Brown that safe and convenient access, including ingress and egress, was a "necessary component of the [p]laintiffs' tenancy upon the [d]efendants' property." Our review of the factual record and relevant legal principles leads us to conclude otherwise.

Issues not raised in the trial court are deemed waived for appellate purposes unless they involve matters of great public importance. Nieder v.

11

<u>Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973).  We conclude the issues raised by plaintiffs do not involve matters of this nature.

Even if we were to consider plaintiffs' argument on the merits, we conclude their contentions on this point fail.  In <u>Brown</u> the Court held in certain instances that nonprofit organizations may be considered commercial landowners for sidewalk liability purposes, imposing a duty upon the entity to safely maintain a sidewalk.  We decline to extend the Court's holding in <u>Brown</u> to the present facts, which are plainly distinguishable because defendants are clearly not a nonprofit organization.

D.

We turn now to plaintiff's contention that genuine issues of material fact existed in the summary judgment record supporting the property was commercial in nature and, as such, defendants had a duty to maintain the sidewalk including the clearing of dangerous conditions including snow and ice.

In New Jersey it is well-settled that a residential property owner is generally immune from liability for accidents resulting from naturally-caused conditions of public sidewalks abutting their property.  <u>Luchejko</u>, 207 N.J. at 195; <u>Wasserman v. W.R. Grace & Co.</u>, 281 N.J. Super. 34, 38 (App. Div. 1995).  Historically, a property owner in New Jersey had no duty under the common law

12

to maintain the sidewalks on their lands that abutted public streets. Yanhko v. Fane, 70 N .J. 528, 537 (1976); see also Gottsleben v. Annese, 482 N.J. Super. 215 (App. Div. 2025) (reaffirming New Jersey's "bright-line" rule that liability for public sidewalk maintenance does not attach to residential owners absent worsening of condition). Similarly, property owners had no duty at common law to clear the snow and ice from public sidewalks. See Davis v. Pecorino, 69 N.J. 1, 4 (1975).

In 1981, the Supreme Court revised the common law and imposed a duty only on commercial property owners or occupants to maintain public sidewalks adjacent to their property. Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 157 (1981). Two years later, the Court held this common law duty imposed upon commercial property owners applies to snow and ice removal. Mirza v. Filmore Corp., 92 N.J. 390, 395 (1983). In 2011, however, the Court declined to extend the duty to a condominium association. It held in Luchejko, the distinction between residential and commercial properties was engrained in our tort law and would not be abrogated so that a duty to maintain sidewalks would apply to residential condominium owners. 207 N.J. at 201–11

However, from the time the common law duty was first imposed on commercial properties, our courts have placed residential rental properties in the

A-0182-24

category of commercial properties if they are not owner-occupied. Stewart, 87 N.J. at 160 n. 7 (apartment buildings are considered "commercial" properties); Wilson v. Jacobs, 334 N.J. Super. 640, 642–43, 646–47 (App. Div. 2000) (house entirely rented to tenant was "commercial"); Hambright v. Yglesias, 200 N.J. Super. 392, 394–95 (App. Div. 1985) (two-family house entirely rented out for profit was "commercial"). The "gray area of the commercial/residential distinction," Luchejko, 207 N.J. at 210, is whether an owner-occupied property with a small number of dwelling units should be considered residential or commercial if the property is also used to generate income for the owner. See Smith v. Young, 300 N.J. Super. 82, 97 (App. Div. 1997) (two-family home, one unit of which was owner-occupied and the other rented to a tenant by the estate of a deceased sister, was "unquestionably residential in use"); Avallone v. Mortimer, 252 N.J. Super. 434, 438 (App. Div. 1991) (where residential property is partially owner-occupied and partially rented, the issue is its "predominant use"); Borges v. Hamed, 247 N.J. Super. 295, 296 (App. Div. 1991) (multi-family home partially occupied by owner and partially rented to relatives was not "commercial"); see also Briglia v. Mondrian Mortg. Corp., 304 N.J. Super. 77, 79 (App. Div.) (home was not commercial property merely because the mortgagee had taken possession at the time of the accident);

14

Wasserman, 281 N.J. Super. at 37, 39 (owner who used one room in his home as a telecommuting office was not a commercial owner).

More recently in Grijalba, 431 N.J. Super. at 57, we grappled with determining whether an owner-occupied home with three units was residential or commercial. We confirmed that "commonly accepted definitions of 'commercial' and 'residential' property should apply, with difficult cases to be decided as they arise." Id. at 62 (quoting Stewart, 87 N.J. at 160). We stated that courts must "employ a case-by-case, fact-sensitive analysis to resolve the commercial-residential distinction." Ibid.

In Grijalba, a four-factor test was established to determine sidewalk liability primarily based on whether the use of the property was commercial or residential. Those factors are:

> (1) the nature of the ownership of the property, including whether the property is owned for investment or business purposes; (2) the predominant use of the property, including the amount of space occupied by the owner on a steady or temporary basis to determine whether the property is utilized in whole or in substantial part as a place of residence; (3) whether the property has the capacity to generate income, including a comparison between the carrying costs with the amount of rent charged to determine if the owner is realizing a profit; and (4) any other relevant factor when applying "commonly accepted definitions of 'commercial' and 'residential' property."

A-0182-24

[Id. at 73.]

Based on our de novo review of the record, we agree with the trial court's analysis of these factors and its conclusion that no genuine factual issues were presented by plaintiffs related to any of these factors which would preclude summary judgment.

We determine factor one of Grijalba supports a determination that the property is residential. The property is owner occupied. Plaintiffs and defendants utilize the property for residential use. There is no support that the property is an investment property, or maintained for business purposes.

The second factor also supports the property being categorized as residential. Both parties agree that they use the property as their primary residence. A review of the record indicates only the room counts for each unit with the first story occupied by defendants containing a living room, dining room, kitchen, three bedrooms, one bathroom, a basement, and yard (plaintiffs did not have access to these areas) and the second story occupied by plaintiffs containing a living room, kitchen, one bathroom, and four bedrooms. Therefore, a substantial portion of the home, including the outside yard, was utilized by defendants.

16

We also determine the trial court's finding that the third factor was "neutral" to be supported by the record. We conclude, as did the trial court, there were no genuine factual issues defendants were realizing a profit from the rent paid because no dispute exists that the rent does not cover defendant's full mortgage.

The trial court found the fourth factor also supports the residential nature of the property, determining "New Jersey regulations generally define residential properties to be those on which a dwelling is located, and where the property is used primarily as a dwelling." The court also found "residential property [is defined as] a structure that is used as a residence or bi-residence." The court also noted that the insurance policy [is] consistent with a homeowners and a residential policy that governs the particular property.

Our de novo review of the summary judgment record does not lead us to conclude otherwise. The record shows defendants lived in and continuously occupied one of the two units in the property since its purchase. No evidence in the summary judgment record supports the property was acquired or predominantly used for business or investment purposes. Further, no genuine issues of material fact existed in the record that the primary use for both units was residential.

A-0182-24

Finally, we address plaintiffs' contention that the court erred by not extending the discovery end date and requiring defendants to produce portions of their tax returns related to the rental property. Here, as found by the trial court, even if plaintiffs were paying off the majority of the mortgage installments through their payment of rent, the discovery sought by plaintiffs would not have altered the analysis under the Grijalba factors because it would not have created genuine issues of material fact that the property should be considered commercial for sidewalk liability purposes. In this instance, there was no need to engage in further discovery because "it w[ould] patently not change the outcome." Minoia v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hawley

Clerk of the Appellate Division

A-0182-24