703 A.2d 997

LILLIAN RESTIVO, PLAINTIFF/APPELLANT, v. CHURCH OF SAINT JOSEPH OF THE PALISADES, NORTH HUDSON COMMUNITY ACTION CORPORATION, DEFENDANTS/RESPONDENTS, AND TOWNSHIP OF NORTH BERGEN, HACKENSACK WATER COMPANY, AND UNITED WATER RESOURCES, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1997—Decided December 30, 1997.

Before Judges CONLEY, WALLACE and CARCHMAN.

*Cynthia M. Maurer* argued the cause for appellant (*Jacoby and Meyers*, attorneys; *Ms. Maurer*, on the brief).

*William A. Cambria* argued the cause for respondent Church of Saint Joseph of the Palisades (*Theresa E. Mullen*, on the brief).

*William O. Crutchlow* argued the cause for respondent North Hudson Community Action Corporation (*Giblin & Combs*, attorneys; *Mr. Crutchlow*, on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

Plaintiff, a pedestrian who slipped and fell on ice on a public sidewalk adjacent to property owned by the Church of St. Joseph of the Palisades and leased to defendant North Hudson Community Action Corporation (North Hudson), a nonprofit organization, sued the Church and North Hudson.[1] North Hudson runs a Head Start community action program on the leased premises. The Church also rents several residential apartments, most at below fair market value and some for no rent at all, to various needy individuals and Church employees. Finding the Church and North Hudson to be non-commercial entities and thus not subject to *Stewart*[2] sidewalk liability, the trial judge granted summary judgments in their favor. On appeal, plaintiff raises the following issues:

I.   THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT, AS THE DEFENDANT CHURCH OF ST. JOSEPH OF THE PALISADES IS A COMMERCIAL ENTITY.

II.  THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT, AS THE DEFENDANT NORTH HUDSON COMMUNITY ACTION CORPORATION IS A COMMERCIAL ENTITY.

We reverse.

The Church admitted to owning the property abutting the sidewalk where plaintiff fell. Precisely where the fall occurred seems not to have been crucial below. Suffice it to say that the parties were content to focus upon the entire expanse of the sidewalk, that is properties located at 7607, 7611, 7615, 7621 and 7623 Broadway. A chapel is located at 7615 Broadway. The other properties are improved with commercial-type buildings with the buildings being almost three stories high. Except for the chapel, the entire ground floor and portions of the second floor of each building, including classrooms, office space and a kitchen, are

---

[1] Plaintiff also sued the Township of North Bergen, the Hackensack Water Company and the United Water Resources. Her complaint against these defendants was dismissed by consent.

[2] *Stewart v. 104 Wallace St., Inc.*, 87 *N.J.* 146, 432 *A.2d* 881 (1981).

leased to North Hudson for $43,443.91 annually (adjusted yearly to meet Consumer Price Index increases). The Church is organized as a nonprofit corporation and uses the money received as rent from North Hudson to pay heat, water, municipal utilities authority tax, water tax, maintenance and upkeep for all of the buildings. Father Rose, the Administrator of the Church, stated in his deposition that he did not recall the Church ever having a surplus at the end of the year.

The remainder of the space in these buildings consists of apartments that are leased to individual families for nominal rent, significantly less than fair market value (approximately $700 to $800 per month), or for no rent at all. Specifically, at 7607, the Bowers family has rented the first floor apartment by verbal agreement for thirteen years for $375 per month. The Church rents the second floor to Mrs. Nunez, the parish secretary, for $400 per month "in an effort to help her and her family out." Her rental agreement is not part of her income. At 7611, in an effort to help a family in need of housing, the Church rents the first floor to the Bendian family for $200 per month. It leases the second floor to the MacDonald family, a tenant for a little over two years, for $200 per month. At 7621, the Church rents the first floor to the DeLaney family, very active Church members and tenants for sixteen years, for $350 per month in an effort to help them continue their ministry. It has rented the second floor to the Tran family for $100 per month since their immigration from Viet Nam sixteen years ago when they needed housing. Finally, at 7623, Mr. and Mrs. Garcia, part-time church employees, have lived on the first floor with their son for approximately five years but have never paid any rent. Juan Escotto, head of maintenance for the Church, needed housing and lived on the second floor for approximately six years paying no rent, but recently moved out.

Father Rose stated that the Church allows the tenants to live rent free or at nominal rents "because of their need and because of the nature of the Church in general, to help wherever it can." Regarding the rent charged to North Hudson, he stated that the

nature of its nonprofit enterprise, the Head Start program, is a factor in setting the rent level, thus the rent is not profit oriented. "We are . . . the Catholic Church in this case, and that the people to whom we rent this facility is a group of people who do great social good, that partnership creates the sense of what the rent is going to be."

As we have said, North Hudson, a nonprofit corporation, uses the rental premises to operate a Head Start community action program. That program provides underprivileged children and their families with preschool education and coordinated health, medical and social services. North Hudson does not charge tuition for the services it renders. It is wholly funded from federal, state and local funds. From that funding, it employs an Executive Director, teachers, staff and purchases supplies for the operation of the preschool. Michael Leggerio, the Executive Director, stated in his deposition that there are a total of 200 paid employees and that North Hudson, which leases other premises, has leased the premises at issue here from the Church for the past 10 to 15 years.

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–2(c). The issue essentially is, giving the opposing party the benefit of all legitimate inferences from the proofs, " 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 536, 666 *A.*2d 146 (1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 251–52, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)).

Resolution of the issue here rests upon undisputed facts. The essential question is the correctness of the motion judge's analysis of the applicable law, that is, sidewalk liability law as it relates to

property owned by religious and/or nonprofit entities. In this respect, the motion judge said as to the Church:

> The question presented is whether a church or other religious organization is deemed commercial and therefore may be liable for injury to a non-beneficiary in a slip and fall on its abutting sidewalk. Commercial landowners are responsible for maintaining, in a reasonably good condition, sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so. *Stewart v. 104 Wallace Street*, 87 *N.J.* 146, 147 [432 *A.*2d 881] (1981). Non-commercial landowners, on the contrary, as at common law, are not subject to liability for conditions of abutting sidewalks.
>
> To inculpate the church, defendant Township of North Bergen relies on *Brown v. St. Venantius School*, 111 *N.J.* 325 [544 *A.*2d 842] (1988), wherein the court extended *Stewart* to a not-for-profit religious school and held that this school, although religious, may be characterized as commercial for purposes of tort liability. *Id.* at 333 [544 *A.*2d 842]. Such a holding was appropriate because the school participated in many business-like activities, such as "charging tuition, paying teachers and buying supplies." Thus, this religious not-for-profit school was a commercial landlord which is subject to tort liability.
>
> *Brown* does not control here, rather *Lombardi v. First United Methodist Church*, 200 *N.J.Super.* 646 [491 *A.*2d 1350 (App.Div.), *certif. denied*, 101 *N.J.* 315, 501 *A.*2d 970] (1985) provides the applicable rule. New Jersey does not impose on a charitable or religious institution an affirmative duty to maintain public sidewalks abutting property or risk money damages for injuries caused to the public by unrepaired defects. *Id.* at 647 [491 *A.*2d 1350]. The rationale for this rule is that a religious institution which does not perform any businesslike functions, such as those listed in *Brown*, 111 *N.J.* at 328 [544 *A.*2d 842], is not commercial, but is non-commercial.
>
> The record in the instant case is devoid of any evidence demonstrating that the Church of Saint Joseph of the Palisades engages in any conduct of a business nature. Therefore, it is a non-commercial entity which is not subject to liability for an injury suffered by a passerby on its abutting sidewalk.

On plaintiff's motion for reconsideration, the judge wrote:

> The facts at bar were put in juxtaposition to those in *Pelaez v. Rugby Laboratories, Inc.*, 264 *N.J.Super.* 450 [624 *A.*2d 1053] (Law Div.1993) ("charitable purpose"), *Gilhooly v. Zeta Psi Fraternity*, 243 *N.J.Super.* 201 [578 *A.*2d 1264] (Law Div.1990) (sidewalk law and fraternity house), and *Parker v. St. Stephen's Urban Dev. [Corp., Inc.]*, 243 *N.J.Super.* 317 [579 *A.*2d 360] (App.Div.1990) (sidewalk law and low income housing project).
>
> The court has reconsidered its decision of December 11, 1995 and examined supplementary material.
>
> The church is not subject to liability. It is not a commercial establishment. Occupancy by a Community Action Corporation, a non-profit charitable entity, is within its own charitable non-commercial religious umbrella. The church furthers its own function in extending itself to meet the needs of charities. That it receives

*compensation is irrelevant—it is not "in business."* Religious institutions need not claim poverty to retain their essential character. In fact, religious institutions may have very great wealth—but it is acquired as part of its non-commercial activities. Nor does incidental rental of space to church workers or the community's needy families convert it to a "profit-making" or commercial entity. Its income is not derived from strangers who have no natural nexus with the church institution.

As to North Hudson, the motion judge said:

> the Court is satisfied that the factual complex here does not resemble *Brown*. That if the school is not a commercial enterprise, it has the non-commercial characteristics. So that even if it were the sole occupant and tenant, it would not be subject to liability for the sidewalk injury, and for that reason I have to grant the movant's application for summary judgment. I don't see a genuine issue of fact in dispute, or a foundation of legal liabilities not at fault that the—now, the—the whole area of sidewalk law has undergone, and is still in the process of undergoing radical change, on a case by case basis, and you have to evaluate the claims on the basis of precedent,—policy. And as against the policy of giving remedy to injured persons, is the one which supports the common law concept of no liability for sidewalk cases. People who use the sidewalk have to look where they're going, even though there's the—even though ice, even though the ice formed in a—in a little crater by cap of the water company. I'm not satisfied that that creates an unreasonable risk anyway, but I don't have to get into that. Life is full of risks. When you walk on the sidewalk, there are risks. And, I'm not sure that society benefits when we ex—expand that area of recoverability for plaintiffs. Motion granted—

Thus, as to both defendants, the motion judge concluded that the *Stewart* abutting commercial property sidewalk liability rule was not applicable because the Church is a religious organization and its use of the property is consistent with its religious tenants and because North Hudson has "noncommercial characteristics." [3] We think he erred in considering the nonprofit and religious purposes of the defendants in their use of the property. We are convinced *Brown v. St. Venantius Sch.*, 111 *N.J.* 325, 544 *A.*2d 842 (1988), requires a different analysis leading to a different result.

---

[3] Plainly, even though a tenant, North Hudson, as to a third party plaintiff, owes a duty of care synonymous with that of an owner, i.e., to provide a reasonably safe premises, including a safe means of ingress and egress encompassing its adjacent sidewalk. *See Antenucci v. Mr. Nick's Mens Sportswear*, 212 *N.J.Super.* 124, 129–30, 514 *A.*2d 75 (App.Div.1986); *Jackson v. K–Mart Corp.*, 182 *N.J.Super.* 645, 649–50, 442 *A.*2d 1087 (Law Div.1981).

The beginning of the analysis, of course, is *Stewart v. 104 Wallace St., Inc., supra,* 87 *N.J.* 146, 432 *A.*2d 881. Prior to *Stewart,* no property owner could be held responsible for a condition of a sidewalk causing injury to a pedestrian that was the product of the elements and ordinary wear and tear. *Yanhko v. Fane,* 70 *N.J.* 528, 532, 362 *A.*2d 1 (1976). *Stewart* overruled *Yanhko* as to commercial property. In explaining the abrogation of *Yanhko* in the context of commercial properties, the court said:

It will provide a remedy to many innocent plaintiffs for injuries caused by improper maintenance of sidewalks. As a corollary, it will give owners of abutting commercial property an incentive to keep their sidewalks in proper repair, a duty already created in many cases by municipal ordinances. It will also eliminate much of the arbitrariness of the old rule. In addition, injured persons will be able to recover for injuries sustained just outside a store as well as those sustained within it. [*Id.* at 157–58, 432 *A.*2d 881.]

In *Mirza v. Filmore Corp.,* 92 *N.J.* 390, 456 *A.*2d 518 (1983), the court extended *Stewart* liability to snow and ice conditions.

Under both *Stewart* and *Mirza,* residential property continued to be subject to *Yanhko*'s rule. To determine whether property was commercial or residential, the court stated in *Stewart* "commonly accepted definitions of 'commercial' and 'residential' property should apply, with difficult cases to be decided as they arise." 87 *N.J.* at 160, 432 *A.*2d 881. In a footnote, the court provided limited guidance stating "[f]or example, apartment buildings would be 'commercial' properties covered by the rule." *Id.* at 160 n. 7, 432 *A.*2d 881. The focus of the sidewalk liability upon adjacent landowners, then, is upon whether the property was residential or commercial, a determination the court recognized in *Stewart* was fact-sensitive and which might generate "difficult cases." 87 *N.J.* at 160, 432 *A.*2d 881.

Following *Stewart,* and in order to determine whether a property is commercial or residential, we focused on the nature of the ownership. An example of the analysis we applied is *Hambright v. Yglesias,* 200 *N.J.Super.* 392, 395, 491 *A.*2d 768 (App.Div.1985). There, a pedestrian fell on an icy public sidewalk in front of a two-family house owned and operated by the defendant as a residential rental business venture. We interpreted *Stewart* as instructing

that it was the nature of the ownership that mattered, not the use to which the property was put, noting *Stewart*'s reference to apartment buildings as being commercial (*Stewart*, 87 *N.J.* at 160 n. 7, 432 *A.*2d 881) and observing that "[a]partment buildings are residential in the sense that they are places where people live; they are commercial in the sense that they are operated by their owners as a business." *Hambright*, *supra*, 200 *N.J.Super.* at 395, 491 *A.*2d 768.

Again, in *Lombardi v. First United Methodist Church*, 200 *N.J.Super.* 646, 491 *A.*2d 1350 (App.Div.), *certif. denied*, 101 *N.J.* 315, 501 *A.*2d 970 (1985), we looked at the nature of the ownership. There, after falling on a public sidewalk dilapidated from normal wear and tear, a pedestrian brought an action against the church which owned the abutting property. The opinion does not indicate what use the church made of the property but we said that "New Jersey has not yet imposed an affirmative duty on charitable and religious institutions to maintain public sidewalks abutting their properties or risk money damages for injuries caused to the public by unrepaired defects. To date, only commercial property owners have been held responsible in this context." *Id.* at 647, 491 *A.*2d 1350.

On the other hand, we looked solely at the use of the property in *Christmas v. City of Newark*, 216 *N.J.Super.* 393, 395, 523 *A.*2d 1094 (App.Div.), *certif. denied*, 108 *N.J.* 193, 528 *A.*2d 19 (1987). There, a pedestrian fell on a sidewalk abutting property owned by the Trustees of the First Presbyterian Church. Although, as in *Lombardi*, the ownership was by a religious organization, it was leased to a doughnut shop and used as such. We considered the property to be commercial property, for which the church trustees could be liable for injuries under *Stewart*.

*Brown v. St. Venantius Sch.*, *supra*, 111 *N.J.* at 331, 544 *A.*2d 842, considered precisely the issues raised in *Lombardi*, *Christmas* and here, that is "whether the requirements of *Stewart* and *Mirza* should be extended to institutions organized exclusively for

religious, charitable, educational or hospital purposes."[4]   Noting
its caution in *Stewart* that while the ordinary definitions of "com-
mercial" and "residential" property are the guides in resolving
sidewalk liability issues but that difficult cases may arise depend-
ing upon the particular facts, the court acknowledged that such a
difficult case was presented to it in light of the religious nature of
the property owner.   It was easy enough for the court to discern
that the St. Venantius School was not a residential use of property
since no one lived there.   *Id.* at 332, 544 *A.*2d 842.   But "the more
difficult question is whether a private school operated by a non-
profit religious corporation falls within the 'commercial' category."
*Ibid.*  In concluding that it did, the court observed that the
operation of the school, albeit nonprofit and religious, had charac-
teristics of a commercial educational enterprise in that it employed
teachers and other personnel, purchased supplies and teaching
materials, maintained a physical plant, charged tuition, and was
subject to certain governmental regulations.   In rejecting the
school's contention that its status as a religious organization
exempted it from *Stewart* liability, the court said "[t]he duty to
maintain its abutting sidewalks would in no way interfere with the
exercise of [its] religious practices...." 111 *N.J.* at 333, 544 *A.*2d
842.   Further observing that " 'religious institutions do not enjoy

---

[4] We note that in stating this as the issue before it, the court referred to
*Lombardi* and *Christmas* simply as two of "the few cases ... [in which we had]
considered the application of the duties announced in [*Stewart* and *Mirza*] to
such entities." 111 *N.J.* at 331–32, 544 *A.*2d 842.   At no point in its opinion,
however, did the court express either approval or disapproval of either case.
But we think it clear that under its analysis, *Lombardi*, if decided today, would
be decided differently, unless the church property at issue was used as a parish
or rectory.   *See Brown*, 111 *N.J.* at 333, 342-43, 544 *A.*2d 842 (Pollock, J.,
concurring) ("[u]nder the rationale of the majority opinion, the rights and duties
of pedestrians and property owners will become a crazy quilt of tort law.   For
example, if the sidewalk extended from the school to a parsonage or rectory, the
church itself, or to other properties owned by the defendants, plaintiff's right to
recover ... would appear and disappear as she walked down the sidewalk.   If
she fell opposite the school, the church, or a restaurant or hotel owned by the
defendants, she could recover, but not if she fell opposite the parsonage or
rectory.").

an absolute immunity from worldly burdens,' " *Ibid.* (quoting *Market St. Mission v. Bureau of Rooming and Boarding House Standards*, 110 *N.J.* 335, 340, 541 *A.2d* 668 (1988)), the court said:

Balancing these interests [the exercise of religious practices and the imposition of "worldly burdens"] in cases such as the one before us requires first that we consider the use of the abutting land, not the nature of the organization that owns the property. For example, if a church owned an abutting property used for a restaurant or hotel, the church in that instance would clearly be a commercial landowner.·... Conversely, the sidewalk in front of a parsonage or rectory abuts residential property.

[111 *N.J.* at 333, 544 *A.2d* 842.]

The court, then, rejected the notion, relied upon by the motion judge here, that religious organizations ought not, *per se*, to be considered commercial property owners. The court also rejected the argument made by defendant, similar to that made here, that nonprofit entities should not be subjected to a duty to maintain their abutting sidewalks because the financial condition of such entities "typically is weak" and "such a duty would impose a considerable monetary burden on their already precarious financial posture[s]." But the court said:

We certainly are mindful of the good works performed by religious and charitable organizations. We acknowledge that unlike for-profit enterprises, nonprofit organizations exist for a broad range of religious and charitable purposes. As the School's own history exemplifies, their financial condition is often weak and their resources scarce. Nevertheless, all nonprofit organizations, like all business, are not the same. Many nonprofit organizations have substantial assets and healthy balance sheets, while many for-profit enterprises operate on thin profit margins and are continually in very precarious financial positions. In *Stewart*, we recognized that the imposition of a duty to maintain abutting sidewalks would place a greater burden on small businesses than on large businesses. 87 *N.J.* at 160, 432 *A.2d* 881. Despite that, we believed that as between even a small business in a weak financial position and an injured pedestrian, the fairer solution was to impose the duty on the business. The same reasoning applies here. Some nonprofit organizations have substantial assets and large budgets and should find this duty only minimally burdensome. Others, like defendant St. Venantius School, are in a very weak position and may be forced to raise tuition or, if need be, generate greater donations to defray any increased costs created by this duty. Nevertheless, we agree with the dissenting opinion below that this result is less harsh than imposing the entire loss on a pedestrian injured by the negligent maintenance of a sidewalk.

[*Brown, supra*, 111 *N.J.* at 333–34, 544 *A.2d* 842.].

Neither did the court perceive that extending the duty of care to its abutting sidewalks "greatly add[ed] to the type of maintenance tasks the school routinely undertakes. Safe and convenient access to the school is undeniably a necessary component of that defendant's daily activities." *Id.* at 334–35, 544 *A.*2d 842. And the court also observed the school "obviously carr[ied] liability insurance." *Id.* at 335, 544 *A.*2d 842.

Finally, while both the church and the school were educational and religious organizations covered by the Charitable Immunity Act, *N.J.S.A.* 2A:53A–7 to –11, the court concluded that imposition of *Stewart* liability did not conflict with the Act or its underlying policies. Noting that the immunity from tort liability available thereunder pertained only to beneficiaries of the organizations and that the pedestrian plaintiff was not a beneficiary such that the Act itself did not provide immunity, the court concluded:

> [W]e discern no legislative policy that leads us to immunize defendants from the liability we impose on commercial landowners for sidewalk maintenance. In the Charitable Immunity Act, the Legislature outlined the contours of charitable immunity for this state, and we do not discern a policy that exceeds those contours and that would lead us to shield defendants from liability in this case. Defendants already enjoy the substantial immunities created by the Legislature in the Charitable Immunity Act. Beyond these immunities, we see no reason why a nonprofit private school run by a charity should receive a greater benefit than any other private school as against the right of a plaintiff to recover for his or her injuries caused by the failure of the school to maintain properly its abutting sidewalk.
>
> [*Brown, supra,* 111 *N.J.* at 338, 544 *A.*2d 842.]

The sense of *Brown* is that insofar as *Stewart* is applicable to property owned by religious, charitable and other nonprofit entities: 1) it is the use of the property that is critical and not the nonprofit/religious/charitable designation of the owner, 2) imposing sidewalk liability upon such an entity where the plaintiff is not a beneficiary thereof, is neither expressly proscribed by the Charitable Immunity Act nor contrary to its underlying policy considerations, and 3) the fact that a nonprofit entity may be in a "weak financial" posture is not a consideration.

The critical issue here, then, is whether defendants' respective use of the property is commercial or residential. As to

defendant Church, we are convinced the use of its property for rental purposes plainly is commercial, regardless of whether it obtains fair market rental value. The fact that it leases part of the property to tenants who live in apartments does not render its own use residential.

In this respect, we are cognizant of the appellate case law subsequent to *Brown* grappling with the concept of mixed residential/commercial uses. *Smith v. Young*, 300 *N.J.Super.* 82, 692 *A.*2d 76 (App.Div.1997), collects, discusses and analyzes those cases, reaching the rather salient observation that "[a]nalysis of the cases decided since *Stewart* and *Mirza* [and *Brown* ] discloses that the commercial-residential distinction [may not be] workable because too many variable are at play. There are non-residential uses that are not commercial in character as that term is commonly understood, *see Brown, supra,* 111 *N.J.* at 332–34, 544 *A.*2d 842, and commercial properties that are seen not to embody qualities generally associated with business holdings, *see Abraham [v. Gupta,* 281 *N.J.Super.* 81, 85–86, 656 *A.*2d 850 (App.Div.),. *certif. denied,* 142 *N.J.* 455, 663 *A.*2d 1362 (1995) (vacant lot zoned but not used for commercial purposes not subject to *Stewart* sidewalk liability) ]." *Young, supra,* 300 *N.J.Super.* at 92, 692 *A.*2d 76. But whatever may be the appropriate analysis in the context of other types of mixed residential/commercial uses, here, the Church's sole use is of a type typically characterized as commercial, regardless of the economics involved in what rent it charges its tenants. We see no basis for altering that character because it is a church engaging in "good" rentals.

■ As to defendant North Hudson, it may be a closer call. What is uses the property for, a preschool facility, is often the type of business engaged in by corporate entities for profit, such as private day care and/or kindergarten facilities. The distinction between it and the parochial school in *Brown* is that the school in *Brown* charged tuition whereas North Hudson does not, indeed because of its federal Head Start funding, probably cannot. But nonetheless, its venture is certainly not residential and, generally,

is of a commercial type. Moreover, although it cannot charge tuition to spread or recoup the cost of a *Stewart* liability, we see no reason why it cannot include in its funding applications an amount sufficient to cover the additional cost (most probably minimal, *see Brown, supra,* 111 *N.J.* at 335, 544 *A.*2d 842) to cover whatever may be its additional maintenance responsibilities. Furthermore it is our understanding that North Hudson is obligated by its lease with the Church to maintain liability insurance, so those costs must already be included in its present funding.

We add only the following reservation. We are convinced that as to the Church, *Brown* is dispositive. It could choose to rent its property otherwise, or to increase its rents to the existing tenants. As to defendant North Hudson, we are not so sure. But any exception and/or refinement of what seem to be the principles of *Brown* must be made by the Supreme Court. Our task is to follow what we can discern is its present dictate.

Reversed and remanded for further proceedings consistent with this opinion.