66 A.3d 226

JORGE GRIJALBA, PLAINTIFF–APPELLANT, v. MARIA FLORO
AND JOSE MARTINS, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted April 8, 2013—Decided June 3, 2013.

Before Judges PARRILLO, FASCIALE and MAVEN.

*Ginarte, O'Dwyer, Gonzalez, Gallardo & Winograd, LLP,* attorneys for appellant (*Michael A. Gallardo,* of counsel and on the brief; *John J. Megjugorac,* on the brief).

*Burke & Potenza, P.A.,* attorneys for respondents (*John D. Potenza,* of counsel and on the brief; *Pilu D. Patel,* on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

Plaintiff appeals from an April 13, 2012 order granting summary judgment to Maria Floro and Jose Martins (defendants) and dismissing his personal injury slip and fall complaint. Under the unique facts of this case, we remand for further proceedings.

In reviewing a grant of summary judgment, we apply the same standard under *Rule* 4:46–2(c) that governs the trial court. *Wilson ex rel. Manzano v. City of Jersey City,* 209 *N.J.* 558, 564, 39 *A.*3d 177 (2012). We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

Plaintiff asserts that Floro converted her owner-occupied two-family-zoned house into a basement-owner-occupied three-family house. He contends that Floro did so to generate additional rental income. The question is whether the property is considered "commercial" or "residential" for purposes of establishing sidewalk liability pursuant to *Stewart v. 104 Wallace Street, Inc.,* 87 *N.J.* 146, 157, 432 *A.*2d 881 (1981). If the property is deemed to be an owner-occupied two-family house, then our decisions since *Stewart* have generally held that the property is considered to be residential, as that term is commonly applied. We do not disturb that precedent. Because there are unresolved and disputed factual issues regarding the nature of the ownership and the use of the property, we direct the judge to analyze the residential-commercial distinction.

## I.

Floro owned a two-family house.[1] When she purchased the house, she lived on the second floor with her now-estranged

---

[1] She sold the property in question in 2010.

husband, Martins, and their son. At that time, she rented the first floor to a tenant, and the basement was unoccupied. This arrangement would typically be considered an owner-occupied two-family house. Floro certified, in support of defendants' motion for summary judgment, that she experienced "financial difficulties," and as a result, she and her son relocated from the second floor to the basement, thereby freeing up the second floor to rent to another tenant. As a result, she generated twice the rental amount. It is unclear from this record whether Floro relocated to the basement before the accident occurred, and for how long she remained there. Plaintiff argues that Floro changed the nature of her ownership of the property and used it essentially like a business. He contends therefore that the classification is commercial.

Plaintiff walked on a sidewalk abutting Floro's property, slipped and fell on ice, and sustained a bimalleolar fracture of his right ankle. His permanent injury required two open reduction surgeries with internal fixation. He sued defendants seeking compensation for the injuries he sustained that were caused by the icy condition.

Defendants moved for summary judgment. They contended that in *Smith v. Young,* 300 *N.J.Super.* 82, 100, 692 *A.*2d 76 (App.Div.1997), we created a bright-line rule that all owner-occupied two- and three-family houses are considered "residential" for purposes of sidewalk liability law, and argued that they therefore had no duty to remove the ice from the sidewalk. The judge granted defendants' summary judgment motion, relying on *Luchejko v. City of Hoboken,* 207 *N.J.* 191, 211, 23 *A.*3d 912 (2011) (holding that a condominium complex is considered residential), and "the legion of cases [that the *Luchejko* Court cited]."

On appeal, plaintiff argues that the judge misapplied the governing law on sidewalk liability. He contends that *Smith* did not establish a bright-line rule that all owner-occupied two- and three-family houses are considered "residential," thereby obviating any tort duty owed to innocent third parties to clear abutting side-

walks from ice and snow. He asserts that, at a minimum, the judge should have conducted a hearing applying the predominant use analysis that we employed in *Avallone v. Mortimer*, 252 *N.J.Super.* 434, 438, 599 *A.*2d 1304 (App.Div.1991) (stating that where a residential property is partially owner-occupied and partially rented, the "applicable considerations of balance and ability to pass along cost require that the residential sidewalk exception be continued for owner-occupants whose residency is established to be the predominant use").[2]

## II.

We start by addressing the law governing sidewalk liability. From 1981 to the present, the New Jersey Supreme Court has rendered several opinions requiring classification between residential and commercial property owners. For three decades the courts have embraced the fundamental notion that residential property owners are not liable for sidewalk injuries. The Court's decisions have consistently reflected that residential property owners differ from commercial property owners who have the ability to spread the cost of loss that an innocent third party may suffer.

In *Stewart*, *supra*, 87 *N.J.* at 157, 432 *A.*2d 881, the Court balanced relevant tort law considerations, and held that "commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so."[3] The Court confined this duty solely to owners of commer-

---

[2] Plaintiff also argues that the judge failed to apply the Multiple Dwellings Act, *N.J.S.A.* 55:13A–1 to –28, which he asserts imposes a duty on landowners of hotels and multiple dwellings to maintain their properties in a reasonably safe condition. We conclude that this argument is without sufficient merit to warrant further discussion in a written opinion. *R.* 2:11–3(e)(1)(E).

[3] In Justice Schreiber's concurring opinion, he listed policy reasons in support of all landowners being liable for negligent maintenance of sidewalks, but he did

cial property and deliberately did not extend sidewalk liability to residential property owners. *Id.* at 159 n. 6, 432 *A.*2d 881. As a result, before determining whether a duty to maintain a sidewalk exists, one must first discern whether the property in question is "commercial" or "residential."

The *Stewart* Court explained that "[a]s for the determination of which properties will be covered by the rule we adopt today, commonly accepted definitions of 'commercial' and 'residential' property should apply, with difficult cases to be decided as they arise." *Id.* at 160, 432 *A.*2d 881. Providing an example of "commercial" property, the Court stated that an apartment building is considered "commercial" and would be covered by the *Stewart* rule. *Id.* at 160 n. 7, 432 *A.*2d 881. Two years later, the Court expanded the obligation to maintain public sidewalks abutting commercial properties to include snow and ice removal. *Mirza v. Filmore Corp.,* 92 *N.J.* 390, 395, 456 *A.*2d 518 (1983).

In 1988, the Court repeated its statement that commonly accepted definitions of "commercial" and "residential" apply when classifying whether property is covered by the *Stewart* rule. *See Brown v. St. Venantius Sch.,* 111 *N.J.* 325, 332, 338, 544 *A.*2d 842 (1988) (determining that a private school operated by a non-profit religious corporation falls within the "commercial" property category). The Court reaffirmed its assertion in *Stewart* that the exercise of distinguishing between "commercial" and "residential" is done " 'with difficult cases to be decided as they arise.' " *Id.* at 332, 544 *A.*2d 842 (quoting *Stewart, supra,* 87 *N.J.* at 160, 432 *A.*2d 881). In other words, we have employed a case-by-case, fact-sensitive analysis to resolve the commercial-residential distinction.[4]

---

not criticize the residential-commercial distinction as unworkable or otherwise problematic. *Stewart, supra,* 87 *N.J.* at 160–62, 432 *A.*2d 881 (Schreiber, J., concurring); *see Luchejko, supra,* 207 *N.J.* at 209, 23 *A.*3d 912.

[4] The *Stewart* Court also commented that "the law of sidewalk liability is an appropriate subject for reconsideration by the Legislature." *Stewart, supra,* 87 *N.J.* at 159 n. 6, 432 *A.*2d 881.

In *Dupree v. City of Clifton,* 175 *N.J.* 449, 815 *A.*2d 960 (2003), the Court affirmed, for the reasons that Judge Newman expressed in our reported decision, the approach we used to classify whether a church owned by a religious or other nonprofit organization is considered "commercial" or "residential." Under the facts of *Dupree,* we focused on the use of that property to determine whether to impose liability. *Dupree v. City of Clifton,* 351 *N.J.Super.* 237, 245, 798 *A.*2d 105 (App.Div.2002). There, Judge Newman summarized, in general, the classification method that we have employed to resolve the "commercial" and "residential" distinction since *Stewart,* and remarked that

[t]he objective in creating the commercial property exception to the no-liability rule was to impose liability upon the party in a better position to bear the costs associated with that imposition.[5] [*Stewart, supra,* 87 *N.J.*] at 158 [432 *A.*2d 881]. Commercial landowners have that ability as well as the ability to distribute those costs. *Ibid.* Thus, when determining abutting sidewalk liability, courts focus on whether a property is commercial or residential.

*Ordinarily,* to determine whether a property is commercial or residential, our courts address the nature of the ownership of the property. *Restivo v. Church of Saint Joseph of the Palisades,* 306 *N.J.Super.* 456, 463–64 [703 *A.*2d 997], *certif. denied,* 153 *N.J.* 402 [709 *A.*2d 796] (1998). For example, if the property is owned for investment or business purposes the property is classified as commercial. *Compare Wilson v. Jacobs,* 334 *N.J.Super.* 640, 645–46 [760 *A.*2d 818] (App.Div. 2000) (one-family residence classified as "commercial" where owners did not occupy that property but, instead, rented it to their adult daughter and did not intend to retain the property at the expiration of the lease), *and Hambright v. Yglesias,* 200 *N.J.Super.* 392, 395 [491 *A.*2d 768] (App.Div.1985) (two-family residence classified as "commercial" where neither apartment was owner-occupied), *with Smith v. Young,* 300 *N.J.Super.* 82 [692 *A.*2d 76] (App.Div.1997) (property classified as "residential" even though co-owner rented an apartment unit to a tenant where the other co-owner occupied another apartment), *and Borges v. Hamed,* 247 *N.J.Super.* 295 [589 *A.*2d 169] (App.Div.1991) (property classified as "residential" where owners of a three-family residence resided in one apartment and other family members resided in the other apartments where there was *no evidence that the rent yielded a profit* ).

Courts have redirected their attention when property is owned by a religious, charitable[,] or other nonprofit organization. In that instance, courts look to the nature of the use of the property and not the nature of the ownership. *Restivo, supra,* 306 *N.J.Super.* at 467 [703 *A.*2d 997]. The status of a nonprofit organization

---

5 The record is silent on whether a property owner, such as Floro, is capable of bearing the costs associated with such an imposition.

as religious or charitable is not crucial to a determination of whether the property is commercial or residential. *Brown* [*supra,* 111 *N.J.* at 333–36, 544 *A.*2d 842]. Instead, it is the use of the property that determines its classification for the purposes of *abutting sidewalk liability.*

. . . .

We believe that the Court in *Brown* [*supra,*] impliedly adopted a rule derived from both cases; namely, where property abutting the offending sidewalk is owned by religious or other nonprofit organizations, courts are directed to focus on the use of that property to determine whether to impose liability. If the use is exclusively religious, e.g., if the organization uses the property solely as a parish or rectory, then the organization will not be considered a "commercial" landowner, and, liability will not be imposed. If the organization's use of the property is partially or completely "commercial," e.g., if the property is used as a parish and for commercial purposes or solely used for commercial purposes, liability attaches despite the nonprofit status of the owners. In that event, the organization is under a duty to maintain the entire sidewalk abutting its property and is liable for injuries to the public caused by unrepaired defects.

[*Dupree, supra,* 351 *N.J.Super.* at 242–46, 798 *A.*2d 105 (emphasis added).]

Finally, in *Luchejko, supra,* 207 *N.J.* at 201–07, 23 *A.*3d 912 the Court reviewed the sidewalk liability case law since issuing its *Stewart* decision three decades earlier. In referring to the classification analysis we employed in *Dupree,* the *Luchejko* majority stated that

[t]he opinion by the Appellate Division, adopted by this Court, reaffirmed that the central inquiry is whether the property is commercial or residential, noting that *such a determination normally "address[es] the nature of the ownership* of the property." [*Dupree, supra,* 351 *N.J.Super.*] at 242 [798 *A.*2d 105]. In the case of *nonprofit owners,* however, the Appellate Division properly recognized that the *examination must focus on "the use of the property and not the nature of the ownership."* *Id.* at 242–43 [798 *A.*2d 105].

[*Id.* at 205, 23 *A.*3d 912 (emphasis added).]

Acknowledging that "apartment buildings" are considered commercial property for sidewalk liability under the *Stewart* rule, the *Luchejko* majority looked at our history of parsing through "various uses of the premises" when we determined whether certain non-owner and owner-occupied single- and two-family structures are "residential." *Id.* at 206 n. 5, 23 *A.*3d 912. Pertinent to our discussion, the *Luchejko* majority cited the following cases that we decided involving non-owner *and* owner-occupied single- to three-family homes:

*Wilson* [*supra,* 334 *N.J.Super.* at 642–43, 646–47, 760 *A.*2d 818] (holding that non-owner-occupied house entirely rented to tenant was "commercial" notwithstanding that tenant was family member whose rent consisted of cost of mortgage, taxes, and performing small repairs); *Briglia v. Mondrian Mortg. Corp.,* 304 *N.J.Super.* 77, 79 [698 *A.*2d 28] (App.Div.) (holding that residential home was not commercial merely because mortgagee had foreclosed and held it at time of accident), *certif. denied,* 152 *N.J.* 13 [702 *A.*2d 352] (1997); *Wasserman v. W.R. Grace & Co.,* 281 *N.J.Super.* 34, 37, 39 [656 *A.*2d 453] (App.Div.1995) (determining that residential owner who used one room as telecommuting office was not "commercial" owner); *Avallone* [*supra,* 252 *N.J.Super.* at 438, 599 *A.*2d 1304] (stating that where residential property is partially owner-occupied and partially rented, the "applicable considerations of balance and ability to pass along cost require that the residential sidewalk exception be continued for owner-occupants whose residency is established to be the predominant use"); *Borges* [*supra,* 247 *N.J.Super.* at 296, 589 *A.*2d 169] (holding that multi-family home partially occupied by owner and partially rented to relatives was not "commercial"); *Hambright* [*supra,* 200 *N.J.Super.* at 394–95, 491 *A.*2d 768] (holding that two-family house entirely rented out by owner for profit was "commercial"); *cf. Abraham v. Gupta,* 281 *N.J.Super.* 81, 85 [656 *A.*2d 850] (App.Div.) (determining that vacant lot unrelated to business enterprise was not "commercial," explaining that "[i]t is the capacity to generate income which is the key"), *certif. denied,* 142 *N.J.* 455 [663 *A.*2d 1362] (1995).

[*Ibid.*]

The cases that the *Luchejko* majority cited focused on either the nature of the ownership or the property use. *Wilson* (non-owner occupied) focused on the nature of the ownership; *Wasserman* (owner-occupied) focused on use; *Avallone* (owner-occupied) focused on use; *Borges* (owner-occupied) focused on use; *Hambright* (non-owner occupied) focused on profit; and *Abraham* (non-owner occupied) focused on nature of ownership. Normally, the nature of the ownership is considered, but with mixed-use property, such as an owner-occupied two- or three-family home, use has generally been a relevant consideration when resolving the residential-commercial distinction. The Court therefore stated that the theme emerging from our decisions in such matters is "whether a property's predominant use has the capacity to generate income, regardless of whether an actual profit is obtained through the use." *Luchejko, supra,* 207 *N.J.* at 206, 23 *A.*3d 912.

In addressing the question of "sidewalk liability of residential or hybrid forms of property ownership and use," Justice Long remarked in her dissent that the Court in *Stewart* recognized there

would be "difficult" determinations in the future. *Id.* at 213, 23 *A.*3d 912 (Long, J., dissenting) (citing *Stewart, supra,* 87 *N.J.* at 159 n. 6, 432 *A.*2d 881). Noting that we have grappled with the commercial-residential distinction since *Stewart,* Justice Long then stated that

> the one thing that is constant throughout the decisions is the recognition that in *Stewart* we did not establish a bright-line rule; rather we engaged in a balancing of the relevant tort law considerations with an eye toward determining whether the imposition of a duty on landowners was rational and fair.
>
> [*Id.* at 219–20, 23 *A.*3d 912 (Long, J., dissenting).]

The majority was also unwilling to employ a bright-line rule regarding condominium complexes. *Id.* at 210, 23 *A.*3d 912. Importantly, the majority in *Luchejko* stated that

> although a handful of difficult cases have probed the gray area of the commercial/residential distinction,[6] the framework continues to provide guidance and predictability for the overwhelming majority of property owners. Residential homeowners can safely rely on the fact that they will not be liable unless they create or exacerbate a dangerous sidewalk condition; commercial owners, defined in reference to their use of the property and its capacity to generate income, know that clearing their abutting sidewalks is a cost of doing business and that failure to do so can lead to liability.
>
> [*Id.* at 209–10, 23 *A.*3d 912.]

We have extrapolated the following themes from these cases regarding sidewalk liability law and the residential-commercial distinction: (1) the Court has acknowledged repeatedly that residential property owners are generally not liable for sidewalk injuries; (2) the Court has maintained the fundamental notion that commercial property owners are better prepared to spread the risk of loss to innocent third parties than residential homeowners; (3) the residential-commercial distinction requires a case-by-case, fact-sensitive analysis; (4) we continue to use commonly accepted definitions of "commercial" and "residential" to resolve the resi-

---

6 The Court cited *Avallone, supra,* 252 *N.J.Super.* at 438, 599 *A.*2d 1304 (stating that in a residential partially owner-occupied and partially rented house, "[the] applicable considerations of balance and ability to pass along cost require that the residential sidewalk exception be continued for owner-occupants whose residency is established to be the predominant use"). *Id.* at 210 n. 6, 23 *A.*3d 912. The *Luchejko* majority did not cite *Smith.*

dential-commercial distinction; (5) in determining whether an owner-occupied two- or three-family home is deemed "residential" or "commercial," courts have considered the nature of the ownership of property and the predominant use of that property; and (6) the commercial-residential framework, even in the gray area of owner-occupied two- and three-family structures, continues to provide guidance and predictability for property owners.

## III.

We now apply these well-settled themes to the facts of this case. In resolving the residential-commercial distinction, we are guided by the Court's directive that "commonly accepted definitions of 'commercial' and 'residential' property should apply." *Luchejko, supra,* 207 *N.J.* at 211, 23 *A.*3d 912 (quoting *Stewart, supra,* 87 *N.J.* at 160, 432 *A.*2d 881).

"Residential" has been defined as "designed for people to live in" and "concerning or relating to residence," *Residential, Oxford Dictionaries Online,* http://oxforddictionaries.com/us (last visited Apr. 25, 2013); and "used as a residence or by residents," *Merriam–Webster's Dictionary* 1060 (11th ed.2012). "Residence" has been defined as "the act or fact of dwelling in a place for some time," and "[t]he place where one lives," *Merriam–Webster's Dictionary* 1335 (11th ed.2012); "[t]he act or fact of living in a given place for some time," and "[t]he place where one actually lives," *Black's Law Dictionary* 1335 (8th ed.2004); and "the place in which one lives or resides." *Hambright, supra,* 200 *N.J.Super.* at 395 n. 1, 491 *A.*2d 768. Moreover, *N.J.A.C.* 13:45A–16.1A [7] defines "[r]esidential or non-commercial property" as

a structure used, *in whole or in substantial part,* as a home or place of residence by any natural person, whether or not a single or multi-unit structure, and that part of the lot or site on which it is situated and which is devoted to the residential use of the structure, and includes all appurtenant structures.

[ (Emphasis added).]

---

[7] Regarding administrative rules of the Division of Consumer Affairs addressing home improvement practices.

"Commercial" has been defined as "concerned with or engaged in commerce" and "making or intended to make a profit," *Commercial, Oxford Dictionaries Online,* http://oxforddictionaries.com/us (last visited Apr. 25, 2013); and "occupied with or engaged in commerce work intended for commerce" and "viewed with regard to profit," *Merriam–Webster's Dictionary* 249 (11th ed.2012). "Commerce is defined as business." *Hambright, supra,* 200 *N.J.Super.* at 395 n. 1, 491 *A.*2d 768.

Relying on *Smith, supra,* defendants contend that the judge granted their summary judgment motion by applying a bright-line rule that all owner-occupied two- and three-family homes are automatically considered residential for sidewalk liability purposes. We agree with plaintiff that the judge did not explicitly dismiss his complaint on that basis. The judge cited, as the basis for her decision, *Luchejko, supra,* and "the legion of cases" cited therein. *Luchejko* cited cases that have focused on both the nature of the ownership and use analysis. The majority in *Luchejko* did not cite *Smith;* Justice Long cited *Smith* in a footnote in her dissent to illustrate that we have grappled with the commercial-residential distinction. *Luchejko, supra,* 207 *N.J.* at 219 n. 2, 23 *A.*3d 912 (Long, J., dissenting).

In *Smith, supra,* we addressed whether a co-owner-occupied two-family house was residential or commercial. *Id.* at 97–98, 692 *A.*2d 76. *Smith* is therefore factually distinguishable. Nevertheless, after we summarized the sidewalk liability case law, we declined to remand, like we did in *Avallone,* because "in the peculiar facts of [the *Smith* ] case," there were "too many factors at play." *Id.* at 93, 98, 692 *A.*2d 76. We asked:

> Would the rental income of the tenanted flat be balanced against the whole of the carrying costs even though half of those costs are borne by a residing owner who receives none of the rental income? Is only half of the rental income to be balanced against the half of the carrying charges borne by the owner who receives all of the rent? Would either approach, or any other, be a real basis of decision, or would it be one artificially created to deal with the apparent equities of the particular situation in the light of a dictated need to classify the property?
>
> [*Ibid.*]

Rather, we resolved the residential-commercial dispute by using the common definition of "residential" and by focusing on the nature of the ownership and use of the property. We noted that the record was silent on the amount of rent and upkeep costs, but stated that the maintenance and repair expenses were divided equally between the co-owners. *Ibid.* We then concluded that the property, in which one co-owner lived in one unit of the two-family house and the remaining co-owner rented out the other unit, was "unquestionably residential in use." *Id.* at 97, 692 *A.*2d 76. Thereafter, we applied the common understanding of the term "residential." *Id.* at 98, 692 *A.*2d 76.

We concluded, therefore, that "[t]he property at issue [in *Smith* ], being a [co-]owner-occupied, two-family home" is residential and exempt from the duty to maintain abutting sidewalks. We agree with the proposition expressed in *Smith* that typical owner-occupied two-family homes are generally in a category of their own and that an exploration of the predominant use of that type of property is usually unwarranted.

Here, however, the parties have disputed not only the nature of the ownership of the property, but also the use to which that property has been put. Unlike *Smith,* the complicated nature of a remand is non-existent because Floro's property is not co-owned. Moreover, *Smith* did not involve an allegation, like here, that the property owner converted her two-family home into a basement-owner-occupied three-family home for business purposes.

Although we stated that owner-occupied two-family homes are in a category of their own, and are usually deemed residential, we remarked that our holding in *Smith* did not resolve classification issues in "owner-occupied [properties that] accommodate more than two or three families." *Id.* at 100, 692 *A.*2d 76. If Floro occupied the basement on the date of the accident, then her property would have accommodated three families. The whereabouts of Floro's occupancy on the date of the accident, however, remains unresolved on this record.

In *Smith*, we also addressed the ability, in non-multiple-dwelling housing situations, of spreading the risk of loss to innocent third parties. We questioned the viability of cost-spreading opportunity in the context of a

> non-residential owner to a single tenant of rental premises, as, for example, in the rental of a one-family home or, as here, in the rental of one flat in an owner-occupied, two-family home in the peculiar circumstances depicted.
> [*Id.* at 93, 692 *A*.2d 76.]

Here, however, the record is silent on the issue of cost spreading. As a result, we do not know whether Floro could have obtained appropriate insurance to cover loss suffered by innocent third parties due to dangerous sidewalk conditions, especially if the predominant use of her property is commercial in nature. In *Stewart, supra,* 87 *N.J.* at 160, 432 *A*.2d 881, the Court

> recognize[d] that the rule adopted today will increase the expenses of many businesses, and will be proportionately more burdensome to small firms than to large ones. However, we anticipate that appropriate insurance will become available and that the cost of such insurance will be treated as one of the necessary costs of doing business.

The *Luchejko* majority indicated that the extra premiums for commercial owners are " 'the necessary costs of doing business,' regardless of the size of the business." *Luchejko, supra,* 207 *N.J.* at 203, 23 *A*.3d 912 (quoting *Stewart, supra,* 87 *N.J.* at 160, 432 *A*.2d 881). The Court concluded that providing a remedy to innocent third parties and incentivizing commercial property owners to maintain and clear abutting sidewalks from snow and ice outweighs any burden on the commercial property owner, regardless of the size of the business. *Id.* at 203–04, 211, 23 *A*.3d 912. Like the burden imposed on small business commercial property owners to maintain and clear abutting sidewalks from snow and ice, owner-occupants who are deemed to own commercial property would be expected to spread the risk of loss to innocent third parties too. And, on this record, we are unable to conclude that these owner-occupants would be unable to do so.

When the Court issued its decision in *Stewart* and addressed the residential-commercial distinction, it recognized that "difficult cases [would] be decided as they arise." *Stewart, supra,* 87 *N.J.*

at 160, 432 *A*.2d 881. The *Stewart* Court did not establish a bright-line rule for those anticipated difficult cases. Three decades later, the *Luchejko* Court noted that "a handful of difficult cases have probed the gray area of the commercial/residential distinction." *Luchejko, supra,* 207 *N.J.* at 209–10, 23 *A*.3d 912. In this context, the Court referred to our decisions in *Restivo, supra,* 306 *N.J.Super.* at 458–69, 703 *A*.2d 997 (addressing property owned by a church), and *Avallone, supra,* 252 *N.J.Super.* at 438, 599 *A*.2d 1304 (regarding owner-occupied and partially rented two-and three-family structures). *Id.* at 210 n. 6, 23 *A*.3d 912.

To be sure, the *Luchejko* Court applied the doctrine of stare decisis and stated that

> [t]he commercial/residential dichotomy represents a fundamental choice not to impose sidewalk liability on homeowners that was established nearly three decades ago. Stare decisis thus casts a long shadow over these proceedings. We should not lightly break with a line of decisions that has promoted settled expectations on the part of residential property owners.
>
> . . . .
>
> The rationale of *Stewart* and *Mirza* remains sound and there are no changed circumstances such that reevaluation is necessary. Although the sidewalk liability line of cases has contained spirited concurrences and dissents arguing for broader liability, those separate opinions registered simple disagreements with the majorities' point of view and did not foretell difficulties that have come to pass in administering the commercial/residential distinction. *See Stewart, supra,* 87 *N.J.* at 160–62 [432 *A*.2d 881] (Schreiber, J., concurring) (listing policy reasons why all landowners should be liable for negligent maintenance of sidewalks, but not criticizing residential/commercial distinction as unworkable or otherwise problematic); *see also Brown, supra,* 111 *N.J.* at 341–44 [544 *A*.2d 842] (Pollock, J., concurring) (arguing for adoption of Justice Schreiber's *Stewart* concurrence).
>
> [*Id.* at 208–09, 23 *A*.3d 912.]

In our view, the handful of cases to which the *Luchejko* Court referred that have "probed the gray area," including owner-occupied two- and three-family structures, have been analyzed, as expected, as they arise on a case-by-case, fact-sensitive basis. This is so because

> our case law has followed that paradigm in the three decades since *Stewart,* clearly eschewing a bright-line analysis in favor of equitably balancing the duty factors. As a result, some residential owners have been held liable for accidents on their

sidewalks and some non-residential owners have been spared such liability. *See Restivo [supra*, 306 *N.J.Super.* at] 468 [703 *A.*2d 997].... [8]

[*Id.* at 213, 23 *A.*3d 912 (Long, J., dissenting).]

As we have seen since we rendered the *Smith* opinion, although there may be "many variables ... at play," we have addressed the residential-commercial distinction in the difficult cases while advancing the "balancing of the tort duty" enunciated in *Stewart* and *Mirza.*

Here, the record must be more fully developed to resolve the residential-commercial distinction. For example, regarding the nature of the ownership, we cannot tell whether Floro used the property for business purposes, such as to yield a profit, and if so, when and for how long that use occurred. Although we do not use profit alone to resolve the residential-commercial distinction, profit is a factor to weigh in evaluating the commercial nature of the property. *See Borges, supra*, 247 *N.J.Super.* at 296, 589 *A.*2d 169 (indicating that a three-family owner-occupied home is residential where the owner lived on the third floor and rented the other two floors to family members without evidence in the record of profit, and expressing no view whether the result would be different if an owner "lived in one apartment and rented the other two [apartments] at market rates"). Floro certified that she had "financial difficulties" and therefore moved to the basement so that she could rent out two units instead of just one, but the parties dispute whether she lived in the basement when the accident occurred. Moreover, in light of her admitted financial difficulties, it is unknown what Floro's employment status was and what impact that may have had on her decision to allegedly treat

---

[8] For example, in the context of sidewalk liability for churches, equitably balancing the duty factors yielded different results depending on the church's use of the property. *Dupree, supra*, 175 *N.J.* at 449, 815 *A.*2d 960 (concluding the property is non-commercial); *Mohamed v. Iglesia Evangelica Oasis De Salvacion*, 424 *N.J.Super.* 489, 500, 38 *A.*3d 669 (App.Div.2012) (remanding to allow for completion of discovery on the residential-commercial distinction); *Restivo, supra*, 306 *N.J.Super.* at 468, 703 *A.*2d 997 (deeming the property commercial).

the premises as a business. Plaintiff testified in his deposition that he had heard Floro was living in the basement, and we give him the benefit of all reasonable inferences at this point, *Brill, supra,* 142 *N.J.* at 540, 666 *A.2d* 146, but, for purposes of analyzing the residential-commercial distinction, this disputed fact must be resolved.

Likewise, on this record, we are unable to determine whether Floro used the property during the relevant timeframe "in whole or in substantial part" as a place of residence. For instance, the record is silent regarding the size of the house and the amount of space that Floro occupied on the date of the accident. It is unclear whether Floro lived in the basement when the accident occurred, and if so, whether that occupancy was temporary or long term. Resolution of these unanswered questions, in the context of this case, would be helpful to determine whether Floro used the property "in whole or in substantial part" as a place of residence.

## IV.

Therefore, on remand, we direct that the judge consider, at a minimum, the following factors when classifying Floro's property as either "commercial" or "residential": (1) the nature of the ownership of the property, including whether the property is owned for investment or business purposes; (2) the predominant use of the property, including the amount of space occupied by the owner on a steady or temporary basis to determine whether the property is utilized in whole or in substantial part as a place of residence; (3) whether the property has the capacity to generate income, including a comparison between the carrying costs with the amount of rent charged to determine if the owner is realizing a profit; and (4) any other relevant factor when applying "commonly accepted definitions of 'commercial' and 'residential' property." Applying such a totality of the circumstances test, on a case-by-case fact-sensitive basis, where the parties have disputed the general nature of the ownership of the property and the use to which it is put, follows the Court's repeated approach for the last

three decades of resolving "difficult cases … as they arise." We express no opinion regarding whether the premises is considered residential or commercial. That determination will more appropriately be made after the record is more fully developed.

We reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction.